# Weinschenk, Executrix, *v.* Western Allegheny Railroad Company, Appellant.

*Evidence—Eminent domain—Railroads—Destruction of spring—Specific uses of water—Adaptability—Water supply—Manner of constructing railroad—Testimony—Striking out testimony—Improper elements of damage.*

1. Where in a proceeding to recover damages for the appropriation of lands by a railroad company it appears that the land taken contained a spring of water which was diverted by the company, it is competent for the plaintiff to show any and every purpose for which the water could and would reasonably be utilized on the land by the owner, as it would enhance the market value of the premises. It is not the question whether the spring had previously been used for any specific purpose, but whether the owner could utilize it advantageously for such purpose in using the land for what it was reasonably adapted.

2. Where in such a case it appeared that prior to the destruction of the spring by the defendant company the plaintiff had no occasion to obtain or use other water than the water on his premises, it is competent for the plaintiff to show how and where he was compelled to obtain water for the purpose for which he had previously used the spring.

3. In such a case the plaintiff may properly show the manner in which the railroad was constructed through his land.

4. In such a case it is not reversible error for the court to refuse to strike out the entire testimony of an unquestionably competent witness who had estimated the difference between the market value of the land before and after the appropriation by the company, although it appears that he had taken into consideration certain elements of damage which he should not have considered, and, after being instructed to eliminate the improper matter, he testifies that he would not reduce the damages on that account.

Argued Oct. 10, 1911. Appeal, No. 194, Oct. T., 1911, by defendant, from judgment of C. P. Lawrence Co., March T., 1906, No. 93, on verdict for plaintiff in case of Katherine Weinschenk, Executrix of George G. Weinschenk, deceased, v. Western Allegheny Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from report of jury of view.  Before POR-
TER, P. J.

At the trial, while the witness, Henry Weinschenk, was
on the stand, the following questions were asked:

"Q. Did it have a value in addition to the use that
had already been made of it?  A. Well, that is all the
value of it—that is all the use but of course we could have
made other uses of it.  Q. What other uses would it have
had?"

Objected to as incompetent and immaterial.

The Court: We will allow the witness to state what
other uses the spring reasonably could be put to, con-
sidering the character of the land and the purposes for
which it was used or adapted.  The witness may answer
the question and an exception is sealed for the defendant.

Question read witness.

"A. Why, the spring being an exceptionally strong
spring could have been cleaned out and fixed for drinking
purposes, and used for irrigating, being nice clear water
it would have been exceptionally well adapted for that
purpose.  Q. Would it or would it not have a value for
household use?  A. Yes."

Defendant's counsel object and ask that the last and
preceding answers be stricken out and withdrawn from
the jury.

. The Court: We will allow the evidence to stand and
seal an exception for the defendant. [1]

"Q. Where has the water been obtained for this garden
and other purposes necessary on this land since the rail-
road was constructed over this spring?"

Objected to as incompetent.

Counsel for plaintiff propose to show that this particu-
lar spring having been taken plaintiff has been compelled
to go outside of the premises for water for garden and
all other purposes on the land.

Objected to as incompetent and immaterial.

The Court: The witness may answer and an exception
sealed for the defendant. [2]

"A. Well, the spring that is located on the Sweikert farm. Q. And not on these lands? A. No, sir. Q. And it is not on this land, that spring? A. No, sir."

F. E. Alborn was asked these questions:

"Q. What was this land worth just prior to the time the railroad entered and appropriated this land? A. Well for the purpose it was used—— Q. What was it worth on the market? A. About $500 per acre. Q. And taking into consideration, Mr. Alborn, the fact that the railroad company went there and went through the center of it from north to south and took a strip of ground 100 feet wide, containing 2.59 acres, in the manner in which the roadway is constructed and for the purpose of operating a railroad thereon the full width of 100 feet or the full width of the right of way, what, in your opinion, would be the market value of that land afterwards?"

Objected to as being incompetent and irrelevant, the question of the manner in which the railroad bed was constructed is not an element to assess damages by.

Question read at suggestion of court.

The Court: The witness may answer and an exception is sealed for defendant. [3]

"A. About half."

C. B. Reno was asked these questions:

"Q. What was the market value of this land as a whole affected by the taking of the land and the operation of the railroad upon it? A. Well, from a third to a half. Q. What would you say that was? A. In dollars? Q. Yes, for 26.12 acres I believe of it originally. A. I would say it was a damage to the farm of $5,000, that includes the spring, as I view it the land taken and the perpetual damage to the farm."

Cross-examination by Mr. Martin:

"Q. What do you include in the perpetual damage to the farm, Mr. Reno? A. The annoyance from the persons operating it watching the trains going back and forward, causing delay in their work, the delay of the employees, the danger attendant to grade crossing and things

like that.   Q. What else do you include in that?   A. I would include the damage to growing crops by soot and smoke falling on them, necessitating loss of the stuff itself, beside the inconvenience—the greater inconvenience in preparing the same for market, I would add that. Q. Anything further?   A. Not further than what was stated in my direct examination—not that I think of now.   Q. You say you include in that the loss of the employees doing their work?   A. Yes, sir.   Q. What do you mean by that?   A. I mean the natural tendency of the human family when a train is going along the road to stop work and watch that train for a few minutes.   Q. And you include that in your estimate of $5,000?   A. Yes, sir, I did. Q. Do you also include in that the possibility or probability of having the crossings stopped by trains crossing? A. The annoyance caused by that, yes, sir."

Counsel for defendant now moves the court to strike out and withdraw from the consideration of the jury all the testimony of this witness, for the reason that he includes in his estimate of damages elements that are not proper to be included in an estimate of damages in this character of cases.

Mr. Aiken: The witness has only stated the facts in connection with the ordinary operation of a railroad.

The Court: We will permit the testimony to stand, upon the condition, however, that the witness will eliminate and we now instruct the witness, that the natural tendency of the human family to stop and look at moving objects is not a proper matter for compensation in this case.   You will have to eliminate that from your estimate of damage.   You can state your damage after eliminating that factor, because that is not such a factor as the jury can consider in determining the damages.

Judge Martin: We ask an exception to the ruling of the court.

The Court: You may inquire further on that point. An exception is sealed for defendant.

Mr. Aiken: "Q. You have stated, Mr. Reno, that the

total damage is $5,000 to this piece of land? A. Yes, sir. Q. Now, would you reduce that on account of this item being eliminated, if so, to what extent? A. I don't think I would."

Judge Martin: I now renew my request to strike out the entire testimony of this witness on account of the fact that he has included in his testimony items that are not proper to be included in an estimate of damages in a case of this character.

The Court: I do not recall any other item he included that is not proper to consider. I cannot think of any now. We will overrule the motion and seal an exception for defendant. [4]

Verdict for plaintiff for $6,354.28 and judgment thereon. Defendant appealed.

*Errors assigned* were (1, 4) in various rulings on evidence as above.

*J. Norman Martin*, for appellant.—The manner of construction was for the company and not an element in assessment of damages any more than evidence as to the value of the property before completion, and this is not admissible: Hoffman v. Bloomsburg & Sullivan R. R. Co., 157 Pa. 174.

Where evidence has been improperly admitted, which tends to prejudice the minds of the jurors, the error is not cured by an instruction in the charge disregarding or to withdraw it from their consideration: Willock v. Beaver Valley R. R. Co., 222 Pa. 590; s. c., 229 Pa. 526; Hamory v. Pennsylvania, Monongahela & Southern R. R. Co., 222 Pa. 631.

*Robert K. Aiken*, for appellee.—The land had been used for gardening, and on this land was the spring of water, and it was proper for the witness "to include in his estimation any and every feature and consideration which

in his judgment would influence the general buyer." Savings & Trust Co. v. R. R. Co., 229 Pa. 484; Wilmington & Reading R. R. Co. v. Stauffer, 60 Pa. 374.

Any burden cast upon the land by the construction of the railroad which detracts from its value is to be considered by the jury in determining the damages: Port v. R. R. Co., 168 Pa. 19; Hoffer v. Canal Co., 87 Pa. 221; Western Penna. R. R. Co. v. Hill, 56 Pa. 460; Comstock v. Ry. Co., 169 Pa. 582.

The credibility of the witness Reno and the value and weight of his testimony were for the jury: Brennan v. R. R. Co., 230 Pa. 228; Lewis v. Springfield Water Co., 176 Pa. 230.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1912:

The assignments allege error in the admission of certain testimony. The first assignment cannot be sustained. It was clearly competent for the plaintiff to prove, as ruled by the trial judge, what uses other than those named by the witness the waters of the spring could reasonably be put to, considering the character of the land and the purposes for which it was used or adapted. The purposes for which the waters of the spring could be utilized on the land, as testified by the witness, were not "mere possibilities," as claimed by the appellant, but, if the witness was credible, the waters could be used advantageously for the purposes for which the land was specially adapted. It was competent to show the volume and character of the water of the spring, that it was pure and fit for domestic use, and that it could be used by anyone occupying the premises for gardening, especially in view of the fact that it appeared the owner made such use of the land. The plaintiff was entitled to show any and every purpose for which the water could and would reasonably be utilized on the land by the owner as it would enhance the market value of the premises. It is not a question whether the spring had previously been used for any specific purpose, but whether the owner could utilize it advanta-

geously for such purpose in using the land for what it was reasonably adapted.

The contention of the appellant that the testimony complained of in the second assignment was not admissible because it did not appear that the plaintiff was previously compelled to procure water outside the premises for the purposes for which he had formerly used the waters of the destroyed spring cannot be sustained. Prior to the destruction of the spring by the defendant company the plaintiff had no occasion to obtain or use other water than the water on his own premises. It was therefore competent for him to show that in the construction of its road, the defendant company had interfered with or destroyed the spring, and how and where he was compelled to obtain water for the purposes for which he had previously used the waters of the spring.

It is true, as argued by the appellant, that the measure of the plaintiff's damages is the difference in the market price or value of the entire tract of land before and after the appropriation by the defendant as affected by the appropriation. In order, however, to ascertain the value of the land after the appropriation, all the elements of depreciation must be considered by the jury. We have held that the jury should consider any burden cast upon the land by the construction of the railroad, the manner in which the road cuts the land, diagonally or otherwise, the inconvenient shape resulting from the construction of the road, the depth of excavations and height of embankments, the obstruction or complete interruption of access to public or private ways, the inconvenience in crossing the railroad and interfering with crossings already established, the division of the tract into different parts so as to prevent the passage of persons or stock from one part to the other or, where the passage is possible, the danger in making the passage, and that the manner of the construction of the road diminished the business of the plaintiff's mill. It is therefore apparent that the appellant's objection, covered by the third assignment, that

the plaintiff could not show the manner in which the road was constructed through his land is not well taken. It is true, as argued by the appellant company, that the manner of constructing the road was to be determined by the company, but the plaintiff was entitled to compensation for the injury done his land by such construction and the amount of the damages was for the jury.

We cannot sustain the fourth assignment. The witness had been examined in chief at some length and had clearly disclosed his competency and had estimated the difference between the market value of the land before and after the appropriation by the company. On cross-examination he disclosed the fact that in making his estimate he had taken into consideration certain elements of damage which he should not have considered. The learned court directed the witness to eliminate the improper matter from his estimate of the damages and said: "You can state your damage after eliminating that factor, because that is not such a factor as the jury can consider in determining the damages." The plaintiff's counsel then asked the witness whether, after eliminating the objectionable item, he would reduce the damages on that account, and the witness replied that he would not. The defendant's counsel did not further cross-examine the witness to ascertain his competency but moved to strike out his entire testimony. It would have been better possibly if, after the court had instructed the witness, the plaintiff's counsel had renewed his question and permitted the witness to give the total damages which he regarded the plaintiff as having sustained by reason of the appropriation of the land. The witness having known the land for eighteen years, seeing it daily, and being familiar with the character of the soil, the improvements made by the plaintiff's intestate and the use made by him of the premises, was so clearly competent to estimate the damages that we are not convinced that the case should be reversed because of the form of the question asked by the plaintiff's counsel, especially in view of the fact that

considering all the witness's testimony the answer would probably have been the same had the form of the question been different.

The judgment is affirmed.