**Dennis HERRIT, Appellant,**

v.

**CODE MANAGEMENT APPEAL BOARD OF the CITY OF BUTLER.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1997.

Decided Dec. 19, 1997.

---

Armand R. Cingolani, III, Butler, for appellant.

James P. Coulter, Butler, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Dennis Herrit (Herrit) appeals from an order of the Court of Common Pleas of Butler County (trial court) affirming the decision of the Code Management Appeal Board of the City of Butler (Board) ordering the structure on his property located at 405 Miller Street, Butler, Pennsylvania (Property) to be razed pursuant to the Codified Ordinances for the City of Butler (Code).[1]

In 1993, Herrit purchased the Property at a delinquent tax sale and the following year he was granted a building permit from the City of Butler to do certain repairs to the Property.[2] On March 21, 1995, the Zoning and Code Management Officer for the City of Butler inspected the Property and noted that Herrit had completed approximately ten percent of the work listed on the permit application. The Zoning and Code Management Officer returned to the Property again on October 17, 1995, and noted that Herrit had not performed any work on the Property since the date of his last inspection. By letter dated March 6, 1996, the City's Code Enforcement Office revoked Herrit's building permit because construction on the Property had not continued at a reasonable pace.[3] Herrit did not appeal the revocation and he did not apply for another permit.

---

1. The City adopted the Building Officials and Code Administrators (BOCA) Code pursuant to the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §§ 35101–39951. Sections PM–110.1 and PM–110.2 of the BOCA National Property Maintenance Code of 1990 were adopted by City Ordinances 1347 and 1349, respectively. 53 P.S. §§ 36014 and 36014.1.

2. The work described in the application included "reconstruct roof, downspout, gutter soffit and fascia—[replace] 45 windows—replace front wall wooden—foundation—siding and garage door."

3. A building permit becomes invalid if work is suspended or abandoned for a period of six months after work commenced pursuant to Section 1305.06 of the Codified Ordinances of the City of Butler. Butler, Pennsylvania, Ordinance 1234 (Oct. 5, 1983).

By letter dated March 22, 1996, the Butler City Solicitor advised Herrit that in the opinions of the City Engineer and Fire Chief/Marshall, the Property was unsafe and created a public nuisance because of its deteriorated walls, eroded foundation and lack of a roof. Because Section PM–110.2 of the BOCA National Property Maintenance Code gives the property owner no option to repair an unsafe structure where the costs of repair would exceed 100 percent of the property's current value, Herrit was ordered to raze completely the Property within 60 days. If he was dissatisfied with this decision, Herrit was advised that he could appeal the decision to the Board, which he did.

After a hearing, the Board affirmed the order directing the Property razed because it was unsafe and created a public nuisance. It also affirmed the decision not to allow repair because those costs (estimated at $52,500) were well in excess of the Property's current value of $1,750. Herrit appealed the Board's decision to the trial court. Without taking any additional evidence, the trial court affirmed the Board's decision to raze the Property and this appeal followed.[4]

The main issue on appeal is whether Section PM–110.2 of the BOCA National Property Maintenance Code of 1990 is constitutional.[5] It provides:

PM–110.2 Unreasonable repairs: Whenever the code official determines that the cost of such repairs would exceed 100 percent of the current value of such *structure*, such repairs shall be presumed unreasonable and it shall be presumed for the purpose of this section that such *structure* is a *public nuisance* which shall be ordered razed without option on the part of the *owner* to repair. (Emphasis in original).

Herrit contends that the Code is unconstitutional because it fails to provide him with an opportunity to repair the Property before demolition. He asserts that this failure constitutes a taking in violation of the Article 1, Section 1[6] and Article 2, Section 1[7] of the Pennsylvania Constitution, and the 5th and 14th Amendments of the Federal Constitution.[8]

In a challenge to the constitutionality of a municipal Code, Herrit bears the burden of proof to show that the Code is unconstitutional by rebutting its strong presumption of validity. *Pap's A.M. v. City of Erie*, 674 A.2d 338 (Pa.Cmwlth.1996); *BAC, Inc. v. Board of Supervisors of Millcreek Township*, 534 Pa. 381, 633 A.2d 144 (1993).

**4.** This Court's scope of review where the local agency developed a complete record and the trial court did not take additional evidence is limited to determining whether the local agency has committed an error of law, abridged any constitutional rights, made any necessary findings of fact that were not supported by substantial evidence, or violated provisions of the local agency law. 2 Pa.C.S. § 754(b); *D'Amato v. Zoning Board of Adjustment of Philadelphia*, 137 Pa. Cmwlth. 157, 585 A.2d 580 (1991).

**5.** It is worthwhile to note that Section PM–110.2 has been eliminated from the 1993 version of the BOCA National Property Maintenance Code.

**6.** Article 1, Section 1 of the Pennsylvania Constitution states:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

This section has been interpreted as affording property owners' rights comparable to the due process and equal protection rights under the 14th Amendment of the Federal Constitution, including the right to the use and enjoyment of their property provided they do not interfere with their neighbors' reasonable enjoyment of their properties and subject to reasonable regulations for the public good imposed under the police power of the state. *See Commonwealth v. National Gettysburg Battlefield Tower, Inc.*, 8 Pa. Cmwlth. 231, 302 A.2d 886 (1973).

**7.** Article 2, Section 1 of the Pennsylvania Constitution states:

The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

We do not understand how this section of the Pennsylvania Constitution has any application to this case.

**8.** In addition, Herrit argues that even if the Code is constitutional, the notice of demolition contained in the March 22, 1996 letter from the Butler City Solicitor was deficient because it did not contain all of the required elements set forth in Section 10616.1(c) of the Pennsylvania Municipalities Planning Code. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

For Section PM–110.2 to be unconstitutional, Herrit must establish that it is arbitrary, unreasonable and has no substantial relation to the promotion of the public health, safety, morals or general welfare of the City of Butler. *Gulla v. North Strabane Township*, 676 A.2d 709 (Pa.Cmwlth.1996); *Appeal of Apgar From Decision of Board of Commissioners of Manheim Township*, 661 A.2d 445 (Pa.Cmwlth.1995).

An ordinance to abate unsafe structures is rationally related to the promotion of the public welfare and is a proper and necessary exercise of a city's police power as long as there is factual evidence to support its application to a specific structure. *City of Pittsburgh v. Kronzek*, 2 Pa.Cmwlth. 660, 280 A.2d 488 (Pa.Cmwlth.1971). The process to abate the unsafe structure must still be carried out in a manner that affords the property owner proper notice and the ability to abate the nuisance. "The purpose of [a] notice of ... demolition is to provide the property owner ... with a reasonable time in which to make repairs in order to eliminate the dangerous condition." *Keystone Commercial Properties, Inc. v. City of Pittsburgh*, 464 Pa. 607, 347 A.2d 707 (1975) (citation omitted). If the property owner fails to repair or eliminate the dangerous condition within a reasonable time, then the City has the ability to abate the public nuisance.[9]

While no Pennsylvania cases have addressed whether a property owner can be precluded from abating the nuisance because of the expense involved, the Kentucky Court of Appeals in *Washington v. City of Winchester*, 861 S.W.2d 125 (Ky.Ct.App.1993) dealt with the constitutionality of the same provision at issue here. In *Washington*, the property owner was advised that her property was a public nuisance as defined by the 1990 BOCA Property Maintenance Code adopted by Kentucky and the property was ordered demolished. Because the costs of repair exceeded 100 percent of the property's appraised value in accordance with Section PM–110.2, the City of Winchester did not allow the property owner the opportunity to repair the property. Holding that Section PM–110.2 was unconstitutional because it did not give the property owner the chance to make repairs and abate the nuisance, the Kentucky Court of Appeals reasoned that the "failure to give the owner the choice was arbitrary ... and requiring demolition without compensation amounts to a taking of property rights." *Id.* at 126–127 (*citing Johnson v. City of Paducah*, 512 S.W.2d 514, 516 (Ky.1974)). It went on to state that, "just as the cost of ... compliance is a property owner's problem, the method of compliance is also the property owner's decision. It's his/her money and far be it from the City to say how a reasonable person should spend his/her money.... [If the property owner] wants to pour huge sums of money into her unfit [property], she has that option." *Id.* at 127.

We agree with the Kentucky Court of Appeals that Section PM–110.2 is not rationally related to the public health, safety or general welfare because there is no rational reason for the City of Butler not to allow a property owner the ability to abate a nuisance on his/her property. If Herrit wants to spend unreasonable amounts of money to bring his Property into compliance, that is only his concern. Accordingly, we reverse the order of the court of Common Pleas of Butler County affirming the decision of the Code Management Appeal Board of the City of Butler denying Herrit's appeal.

### ORDER

AND NOW, this 19th day of December, 1997, the order of the Court of Common Pleas of Butler County dated December 16, 1996, A.D. No. 96–10572, is reversed.

---

**9.** A reasonable amount of time has ranged from 30 days, *see Keystone Commercial Properties, Inc. v. City of Pittsburgh*, 464 Pa. 607, 347 A.2d 707 (1975), to 90 days, *see Groff v. The Borough of Sellersville*, 12 Pa.Cmwlth. 315, 314 A.2d 328 (1974), to even four months, *see King v. Township of Leacock*, 122 Pa.Cmwlth. 532, 552 A.2d 741 (1989). Of course, if the property were an immediate hazard to the general health, safety and welfare of the community, a City can forgo notice and the ability to cure to the property owner. *See, e.g.,* The Second Class City Code, Act of May 13, 1915, P.L. 297, *as amended*, 53 P.S. § 25094.