CITIZENS FOR PERSONAL WATER RIGHTS by David A. Brooks, Trustee ad Litem and David A. Brooks, individually, Appellants,

v.

BOROUGH OF HUGHESVILLE.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2002.

Decided Dec. 11, 2002.

**16**

Cliff Rieders, Williamsport, for appellants.

J. Howard Langdon, Muncy, for appellee.

Before LEADBETTER, J., COHN, J., and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Appellants Citizens for Personal Water Rights, and David A. Brooks (Citizens) appeal[1] from an order of the Court of Common Pleas of Lycoming County (Trial Court). The Trial Court overruled in part, and sustained in part, the preliminary objections of Appellee Borough of Hughesville (Borough) to Citizens' amended complaint (Complaint) challenging, *inter alia*, the constitutionality of a Borough ordinance requiring residents to connect to the Borough's water system. The Trial Court dismissed Citizens' Complaint for failure to state a claim upon which relief could be granted. We affirm.

Borough, a municipal corporation situated in Lycoming County, Pennsylvania, enacted Ordinance No. 2 of 2000, Mandatory Water Connection (Ordinance), on November 13, 2000. The Ordinance became effective on December 13, 2000, and required all owners of improved property within Borough to connect to the municipal water system on or before December 1, 2002. The Ordinance prohibited the interconnection of a private well plumbing system and the municipal water system, and specifically restricted the use of private well water to the washing of motor vehicles, the watering of livestock, and the watering of lawns, shrubbery, and plants.[2]

Citizens are an incorporated association with members who are residents and electors of Borough. There are approximately 23 residents of Borough, some or

---

1. Citizens' instant timely appeal from the Trial Court's order was originally filed with Superior Court, which transferred this case to Commonwealth Court by order dated December 12, 2001.

2. The relevant text of the Ordinance reads, in part material to the instant appeal:

    Section 4: *Water Pipeline Connections Required:*
    A. All Owners of improved properties whose property line is within one hundred and fifty feet (150') of any water main shall make connection to the water main for the purpose of conducting water to the structure or structures on the property . . .

    \* \* \*

    Section 5: *Private Wells:*
    C. It shall be unlawful for any Owner of improved property to construct or maintain a private well with the exception that private wells may be constructed, maintained and used for washing of motor vehicles and similar items of personal property, watering livestock, and watering lawns, shrubbery and plants, as long as the Owner is in full compliance with all provisions of this Ordinance.
    Reproduced Record (R.R.) at 4a, 6a.

all of whom are members of Citizens, who own and use private wells as their water source and who are not yet connected to Borough's water system.

On December 11, 2000, Citizens filed a civil action, at law and in equity, against Borough. Borough then filed preliminary objections thereto. Citizens subsequently filed an amended complaint on February 16, 2001, and Borough again filed preliminary objections thereto. Citizens then filed a second amended complaint, which was again followed by preliminary objections from Borough. Citizens requested that the Trial Court enter an order preventing Borough from enforcing the Ordinance due to its unconstitutionality, requiring Borough to make an appropriate study and findings with regard to the need or necessity for private well water users to hook up to the public water system and/or to effectively ban private well water use, and to grant monetary relief including attorney's fees.

The Trial Court held oral argument on Borough's Preliminary Objections on July 17, 2001, and thereafter issued an order dated September 24, 2001. That order overruled in part and sustained in part Borough's preliminary objections, and dismissed Citizens' Complaint for failure to state a claim upon which relief could be granted.

The Trial Court, after directing Citizens to file a concise statement of the matters complained of on appeal pursuant to Pa. R.A.P.1925, thereafter filed with this Court an opinion supporting its July 17, 2001 order. Therein, the Trial Court held that no authority existed for the Trial Court to require Borough to conduct the study and/or findings requested by Citizens, that

the Ordinance was consistent with the grant of authority of Section 1202(39) of The Borough Code,[3] and that Citizens possessed no constitutional right to the use of their private well water. The Trial Court further held that Borough did not deprive Citizens of their water supply, but rather substituted a public water supply therefor, and that in light of The Borough Code's grant of authority, Citizens' property rights in their private water supply were not unconstitutionally infringed upon.[4]

■ On appeal of a trial court's action sustaining a preliminary objection and dismissing a complaint, Commonwealth Court's scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Miller v. Kistler,* 135 Pa.Cmwlth. 647, 582 A.2d 416 (1990), *petition for allowance of appeal denied,* 527 Pa. 656, 593 A.2d 427 (1991). In reviewing preliminary objections in the nature of a demurrer, the reviewing court must accept as true all well-pled facts, which are material and relevant, as well as all inferences reasonably deducible therefrom. *Cohen v. City of Philadelphia,* 806 A.2d 905 (Pa.Cmwlth. 2002).

Citizens present one question for our review: whether the Trial Court erred in dismissing Citizens' Complaint based on its holding that Citizens failed to state a claim upon which relief could be granted. More specifically, Citizens argue that they have a constitutionally protected interest in their water supply, and Borough's failure to show any safety or public policy reason to ban the continued use of that water supply constitutes a regulatory taking.

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46202(39).

4. The Pennsylvania State Association of Boroughs, of which Borough is a member, submitted an Amicus Curiae brief in support of Borough's position.

Pennsylvania's Courts have consistently recognized that Article 1, Section 1 of the Pennsylvania Constitution [5] affords property owners a right to the reasonable use and enjoyment of their properties, subject to reasonable regulations for the public good imposed under the police power of the state. *Herrit v.Code Management Appeal Board,* 704 A.2d 186 (Pa. Cmwlth.1997). A party challenging the constitutionality of a municipal ordinance, such as the challenge to the Ordinance *sub judice,* bears the burden of proof to show that the ordinance is unconstitutional by rebutting the strong presumption of the ordinance's validity. *Id.* For the challenged section to be found unconstitutional, the challenging party must establish that the section is arbitrary, unreasonable, and has no substantial relation to the promotion of the public health, safety, morals or general welfare of the municipality to which it applies. *Id.*

The crux of Citizens' appeal—that the Trial Court erred in not acknowledging Citizens' property right to the use of their private well water—is primarily supported by Citizens' citation to our Supreme Court's opinion in *Perla v. Commonwealth,* 392 Pa. 96, 139 A.2d 673 (1958).

In *Perla,* the Supreme Court held that the trial court did not err in concluding that a private property owner's temporary deprivation of his customary water supply was not to be considered by the jury in its consideration of the damages incurred by that owner. The property owner in that case had been temporarily deprived of his water source due to the Commonwealth's construction efforts on an adjacent state highway, which source was restored to its prior state following the construction. The Court specifically held that the "only deprivation of water that the plaintiff ever suffered was purely incidental to the new construction work and did not constitute a taking, injury or destruction of the owner's property right in his usual water supply". *Perla,* 392 Pa. at 98–99, 139 A.2d at 674. The Court's analysis centered upon the temporary nature of the deprivation, and the subsequent restoration of that plaintiff's water supply. *Id.*

In making that determination in *Perla,* the Supreme Court relied upon *Weinschenk v. Western A. R. Co.,* 233 Pa. 442, 82 A. 750 (1912), wherein the Court determined that the destruction of a private spring necessitating the bringing in of another water supply was a compensable injury. *Weinschenk* recognized that where a property owner is deprived of any of the advantageous uses of his customary water supply by the acts of another private party, there existed an infringement on the property owner's property rights. *Weinschenk,* 233 Pa. at 448, 82 A. at 752.

Citizens argues that *Perla* and *Weinschenk* clearly establish the existence of a property owner's rights in the water supply under their property, and in the continued use thereof, notwithstanding the availability of a substitute water source provided therefor. While we do agree that those two precedents do recognize, to a degree, a property right in a land owner to his customary and usual water supply, we do not find those cases persuasive in the disposition of the issue at bar. Neither *Perla* nor *Weinschenk* involved a municipal ordinance as in the instant case, and for that reason, those precedents did not

---

5. Article 1, Section 1 reads:
   All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.
   Pa. Const. art. I, § 1.

analyze the strong presumption of constitutionality that attaches to such an ordinance. *Herrit.* Further, and equally critical as a distinction, those cases did not analyze the deprivations at issue in regards to an ordinance's substantial relation to the promotion of the public health, safety, or general welfare of the municipality to which it applies. *Id.*

Although Pennsylvania's Courts have never directly addressed the constitutionality of a water connection ordinance in relation to an alleged taking of a property owner's rights in the water source to be replaced by the ordinance's mandate, we can find guidance in precedents that have discussed such ordinances and their tangential and direct effects upon property owner's rights.

In *Hatfield Township v. Lansdale Municipal Corporation,* 403 Pa. 113, 168 A.2d 333 (1961), property owners brought a class action suit seeking to enjoin the Lansdale Municipal Authority from operating a well in Hatfield Township. The Authority had previously performed a trial run of its well, which had resulted in the diminution and dehydration of the property owner's customary water supply from their own private wells. The Supreme Court affirmed the trial court's grant of a permanent injunction against the operation of the Authority's well, emphasizing that the injunction would be conditionally lifted upon the Authority's joining to its system all interested injured parties within a certain radius. In arriving at its conclusion that any injury rendered onto the property owners could be made whole by the substitution of a municipal water supply for the owner's private supply, the Court expressly took notice of the value of the municipality's function and service in providing clean and safe water to its residents. The Court emphasized that a court of equity in

cases involving subterranean water rights could balance the needs of a total community affected by a permanent injunction halting the operation of the municipal water system against the property rights of the affected land owners whose customary water supply had been affected. *Hatfield,* 403 Pa. at 116, 168 A.2d at 334.

While *Hatfield* did not involve a traditional takings issue or analysis, the balance articulated by the Court in that case can be read to partially reflect the analysis of a mandatory water connection ordinance's substantial relation to the promotion of the public health, safety, or general welfare of the municipality to which it applies, as articulated in *Herrit.* While not dispositive to the matter *sub judice,* we find instructive the *Hatfield* Court's conclusion that a municipality's operation of its water supply system, even to the extent that it seriously or permanently impairs a property owner's customary private water well supply, was permissible where that municipality's water supply system would satisfy those owner's water needs in substitution for their customary supply. As the Court presciently noted, in 1961:

> The problem of water supply is fast becoming a matter of great concern in Pennsylvania. It is not apocryphal to note that the super-abundance of water that we have enjoyed in the past may soon be reduced to mere adequacy as a result of industrial expansion, increased agricultural development and irrigation, and population growth.

*Id.* at 116, 168 A.2d at 334.

In *Herbert v. Commonwealth,* 159 Pa. Cmwlth. 208, 632 A.2d 1051 (1993),[6] this Court affirmed the summary conviction of a property owner who had violated a municipal ordinance, substantially identical to

---

**6.** *Petition for allowance of appeal denied,* 540    Pa. 607, 655 A.2d 994 (1995).

the Ordinance at issue in the present case, that required homeowners to connect to the municipality's water supply system and to abandon their private water well use. Although the issue of whether or not that ordinance resulted in a regulatory taking of the property owners' rights in their customary water supply was not addressed, *Herbert* did cogently discuss and recognize a municipality's authority to enact mandatory water connection ordinances, and their concomitant authority to require that property owners abandon their customary private well water supplies. In addressing the same section of The Borough Code that authorizes Borough's actions in the instant case, we wrote:

Section 1202 of [T]he Borough Code, 53 P.S. § 46202, vests enumerated specific powers in the Borough and allows it to enact ordinances to exercise those powers. In pertinent part, Section 1202 gives the Borough the specific power regarding:

(6) Health and cleanliness regulations. To make such regulations as may be necessary for the health, safety, morals, general welfare and cleanliness and the beauty, convenience, comfort and safety of the borough.

(39) Water supply. To provide a supply of water and to make regulations for the protection of the pipes, reservoirs and other constructions or apparatus; to prevent the waste of water so supplied, and to regulate the drilling of wells within the district.

Additionally, Section 2461 of [T]he Borough Code, 53 P.S. § 47461, entitled Ordinances to require water connections, provides:

[a]ny borough supplying water for the use of the public within such borough ... may, by ordinance, require any owner of property abutting upon any street in which there is a water main constructed or acquired by the borough, to make connections with such water line, for the purpose of conducting water to such property ...

These sections of [T]he Borough Code granted the Borough the authority to enact [the mandatory water connection] Ordinance which requires Herbert to connect his property with the public water system ...

The statutory authority, therefore, allows a borough to require that landowners attach their property to the public water service in such a way that it can conduct water to the property.

*Herbert,* 632 A.2d at 1053–1054.

Again, while *Herbert* did not directly address the issue of whether the mandatory connection ordinance's substitution of its water supply for the owners' customary one constituted a taking,[7] we find that case's analysis of a municipality's authority to enact a mandatory water connection ordinance directly applicable to Borough and the Ordinance in the case at bar. Clearly, Borough was authorized by Sections 1202 and 2461 of The Borough Code to enact the Ordinance at issue.[8]

7. We note, however, that our opinion in *Herbert,* in addressing the fact that the takings issue was not properly before us in that case, did cite to authorities from other jurisdictions that have refused to find a taking in their analysis of mandatory connection statutes and their effects on customary water supplies. *See Herbert,* 632 A.2d at 1054, n. 6. While not dispositive, we do find the plethora of cases from other jurisdictions upholding the constitutionality of mandatory connection ordinances instructive.

8. We emphasize that, in the wake of our opinion in *Herbert* and its express recognition of a municipality's authority to enact mandatory water connection ordinances pursuant to The Borough Code, this Court has recently held

Most on point to the instant matter, and most persuasive, is the federal precedent of *Stern v. Halligan*, 158 F.3d 729 (3d Cir.1998). In *Stern*, plaintiff property owners were served by privately owned well water. A New Jersey local municipal ordinance ordered plaintiffs, pursuant to a mandatory water connection ordinance substantially similar to the Ordinance at issue instantly, to connect to the municipal water supply and to permanently disconnect from their customary well water supply. Plaintiffs brought suit against the municipality, alleging, *inter alia*, that the mandatory water connection ordinance was unconstitutional, and that the mandatory connection/disconnection requirement constituted a taking. The Third Circuit Court of Appeals affirmed the District Court's grant of summary judgment for the municipality, holding that there was a rational basis for the ordinance.

Although the *Stern* Court did not rule directly on the takings issue due to the plaintiffs' failure to first seek compensation in state proceedings, the Court did perform a cogent and insightful analysis of the due process implications, and succinctly discussed the concomitant alleged takings:

> The plaintiffs contend that [the mandatory water connection] Ordinance ..., which requires residents to hook up to the public water supply when it becomes available and to discontinue the use of well water in the home, violates the United States Constitution because their well water is "safe and pure." ...

We have made clear that when "general economic and social welfare legislation" is alleged to violate substantive due process, it should be struck down only when it fails to meet a minimum rationality standard, an "extremely difficult" standard for a plaintiff to meet. The only question is "whether the law at issue bears any rational relationship to any interest that the state legitimately may promote," simple unfairness will not suffice to invalidate a law. The challenger bears the burden of proving irrationality.

The plaintiffs have not met their burden. **Protecting the health, safety, and general welfare of township inhabitants, the goal of the challenged ordinances, is plainly in the public interest.** Private wells can be unsafe for a disturbingly long list of reasons....

These potential harms provide ample justification for government action to safeguard citizens. **Because pure water is a precondition for human health, regulating the water supply is a basic and legitimate governmental activity.** A municipal water supply replaces a myriad of private water sources that may be unmonitored or, at best, difficult, expensive, and inefficient to monitor. Therefore, **a legislature may rationally conclude that a public water supply is the simplest and safest solution for its citizenry as a whole without proof of danger to each and every affected person.** The danger is

that a municipal ordinance making such a connection *optional* for some residents of the municipality is invalid under The Borough Code's grant of authority, in that a mandatory connection ordinance must require connection to a municipal water supply on a "water system wide" basis. *Vernon Township Water Authority v. Vernon Township*, 734 A.2d 935 (Pa.Cmwlth.1999). While *Herbert* recognizes

a municipality's authority to enact mandatory connection ordinances, *Vernon Township* makes clear that such an ordinance must mandate connection by *all* property owners located within a municipality's system area, notwithstanding the availability of other water sources therein for some property owners. *Id.*

significant, the burden of connecting to nearby waterlines is not great, and the costs and benefits of such legislation are widely shared throughout the area of service. For these reasons, the overwhelming majority of courts that have addressed the issue have found that mandatory connection to public water is a legitimate exercise of police power. . . .

\* \* \*

Consequently, **plaintiffs have no right to have their wells service their houses, even though the township has not proven that the wells are dangerous. Indeed, even if the plaintiffs can prove the current safety of their water, they would not be exempt from the generally applicable connection requirement. Mere over- or underinclusiveness will not invalidate social welfare regulation so long as the state action represents a rational response to a legitimate problem. Mandatory connections to public utilities are classic examples of social welfare regulations that merely adjust the burdens and benefits of life in the modern world.** It cannot escape our notice that from the inception of such sanitary programs—and even during the *Lochner* era—courts have routinely rejected constitutional challenges to mandatory connection requirements.

In the end, the plaintiffs' apparently quite sincere belief that the ordinance represents an unjustified intrusion on their rights as citizens does not carry the day. Most laws appear intrusively burdensome to at least some of those whose conduct is thereby governed. But the legislature may respond to potential threats to the safety and welfare of its citizens, and may require even those who consider themselves careful or lucky enough to escape harm to comply with generally applicable laws.

*Stern,* 158 F.3d at 731–732, 734 (citations omitted; emphasis supplied). Upon concluding that the takings claim was not properly before them, the Court nevertheless continued:

Such a [takings] claim would be meritless in any event. The Supreme Court has noted that, after a finding that due process has not been violated, "it would be surprising indeed to discover a [regulatory] taking," because the relevant analysis is so similar. Moreover, regulatory taking, requiring just compensation therefor, occurs when there has been a deprivation of "all economically beneficial use" of property . . . There is no indication that the plaintiffs' wells constitute all (or, indeed, any) of the economic value of their land. The value of the water pipes running from the plaintiffs' wells to their houses and of the limited amount of interior plumbing affected by the disconnection does not begin to approach the total destruction of value required before we will find a taking.

*Id.* at 734. We find the *Stern* Court's analysis and reasoning instructive, persuasive, and directly applicable to the appeal *sub judice.*

In the instant matter, the strong presumption of the Ordinance's constitutional validity is buttressed by *Herbert's* recognition of a municipality's valid authority to enact mandatory connection ordinances, and to further mandate the disconnection of private customary well water sources. Further supporting that validity is the undisputable goal of the Ordinance to eliminate any potential unsafe characteristics of private water supplies, and the goal of providing safeguards to the residents' health and welfare in the form of a safe and uniform water supply.

 The Ordinance's substantial relation to the promotion of the public health, safety, and general welfare of Borough's citizens is further supported by the Ordinance's express articulation of its purposes:

> Section 2: *Purposes:*
>
> This Ordinance is adopted and enacted for the following purposes:
>
> a. To protect and provide for the public health, safety and general welfare of the citizens of Hughesville Borough.
>
> b. To insure an adequate and safe water supply for the people of Hughesville Borough.

R.R. at 2a. *Accord* Section 1202 of The Borough Code, 53 P.S. § 46202. We agree with, and adopt, the *Stern* Court's express recognition that the regulating of a water supply is a basic and legitimate government function. *Accord Hatfield.* We further agree with the analysis in *Stern* that mandatory connections to public utilities are, on their face, classic examples of necessary social welfare regulations that respond to the increasing health and safety concerns and needs of our modern society.

 Finally, Citizens, as the party challenging the constitutional validity of the Ordinance, has failed to establish that the Ordinance is arbitrary, unnecessary, and without substantial relation to the promotion of the public health, safety, or general welfare of the citizens of Borough. Any deprivation of Citizens' property rights in their customary water supply, and any alleged diminution in the value of Citizens' economic value in their property due to Borough's substitution of its water supply for Citizens' existing supply, do not rise to the level of a taking under the instant facts as pled by Citizens in their second amended complaint. .

Accordingly, we affirm.[9]

### *ORDER*

AND NOW, this *11th* day of *December,* 2002, the order of the Court of Common Pleas of Lycoming County, dated September 24, 2001, at No. 00–01, 900, is affirmed.

---

9. Citizens also argue that the Trial Court's reliance on *Hatfield,* for the proposition that only a total elimination of a water supply is sufficient to warrant a finding of an unconstitutional infringement on Citizens' property rights, is misplaced. We agree. However, our foregoing analysis yields the same result as that reached by the Trial Court. It is axiomatic that this Court may affirm a trial court's order for any reason, regardless of the trial court's rationale, so long as the basis for our decision is clear on the record. *Pennsylvania State Police v. Paulshock,* 789 A.2d 309 (Pa.Cmwlth.2001).