BONNER v CITY OF BRIGHTON

Docket No. 302677. Submitted April 3, 2012, at Detroit. Decided December 4, 2012, at 9:10 a.m. Leave to appeal granted, 493 Mich ___.

Leon V. and Marilyn E. Bonner filed an action against the city of Brighton in the Livingston Circuit Court, claiming that the city's order under Brighton Code of Ordinances (BCO), § 18-59, to demolish certain of their residential structures violated, in part, their procedural and substantive due process rights. BCO 18-59 states that if a structure is determined unsafe and that the cost of the repairs would exceed 100 percent of the true cash value of the structure before it was deemed unsafe, the repairs are presumed unreasonable, and the structure is presumed to be a public nuisance which may be ordered demolished without option on the part of the owner to repair. The city notified plaintiffs of the structures' various defects and code violations, informed plaintiffs that the structures had been deemed unsafe as defined in the BCO, were presumed to be a public nuisance and ordered them to demolish the structures within 60 days with no option to repair. Plaintiffs appealed the determination to the city council in accordance with the BCO. Following an evidentiary hearing at which both parties submitted evidence, the city council concluded that the residential buildings constituted unsafe structures for purposes of the BCO, that the structures were unreasonable to repair because the cost of the needed repairs would exceed 100 percent of the structures' true cash values before they became unsafe, and ordered plaintiffs to demolish them within 60 days, which plaintiff did not. The city then filed a competing action in the circuit court, seeking an order enforcing BCO 18-59 and requiring the structures to be demolished. The court, Michael P. Hatty, J., denied the city's preliminary injunction request, and granted plaintiffs partial summary disposition, concluding that BCO 18-59 violated substantive due process on its face because it precluded property owners from having the opportunity to repair their property. The circuit court denied the city's motion for reconsideration, and the Court of Appeals granted the city's application for leave to appeal.

The Court of Appeals *held*:

1. The Due Process Clauses of the United States and Michigan Constitutions, US Const, Am XIV, and Const 1963, art 1, § 17, include procedural and substantive components. Substantive due process protects individual liberty and property interests from arbitrary government actions regardless of the fairness of any implementing procedures. The right to substantive due process is violated when legislation is unreasonable and clearly arbitrary, having no substantial relationship to the health, safety, morals, and general welfare of the public. A violation is established only when the governmental conduct is so arbitrary and capricious as to shock the conscience. It is a permissible legislative objective for a city to demolish unsafe and dangerous structures to protect its citizens. BCO 18-59 creates a rebuttable presumption that repairs to an unsafe structure would be unreasonable if the costs would exceed 100 percent of the true cash value of the structure before it was deemed unsafe. The code section violates substantive due process because it arbitrarily and unreasonably denies a property owner the option to repair an unsafe structure rather than ordering demolition with no option to repair simply on the basis that the city deems repair efforts to be economically unreasonable. Because abatement of the public nuisance can be attained through either repairs to or demolition of the house, the repair restriction in BCO 18-59 has no reasonable relation to the public welfare and violates substantive due process.

2. Procedural due process requires that a person may not be deprived of his or her life, liberty, or property without due process of law. A violation occurs when the government unlawfully interferes with a protected property or liberty interest without providing adequate procedural safeguards. A procedural due process claim is established by showing that a recognizable property or liberty interest was deprived under the color of state law without due process of law. The procedures that are constitutionally required in a particular fact situation are determined by examining (1) the private interest affected by the governmental action, (2) the risk of an erroneous deprivation of the interest under existing procedure and the value of additional safeguards, and (3) the adverse impact on the government of requiring additional safeguards, including the consideration of fiscal and administrative burdens. Although the circuit court did not address this issue, plaintiffs' arguments contained procedural due process elements which the Court of Appeals chose to address. In addition to the notice, hearing, and an impartial decision-maker provided by the BCO before a final demolition order, procedural due process

required that plaintiffs be provided a reasonable opportunity to repair the unsafe structure, regardless of whether doing so might be viewed as economically unreasonable. The code's requirement that a property owner must demonstrate the reasonableness of the repairs to rebut the presumption of unreasonableness violates procedural due process because the ordinance does not place constraints on the unfettered discretion of the city council in its review of the demolition order and the city council must use the same economic reasonableness presumption for unsafe structures in its review.

Affirmed.

MURRAY, J., dissenting, would have reversed the circuit court order that granted partial summary disposition to plaintiffs. He would have concluded that BCO 18-59 did not violate substantive due process because there are circumstances, such as when the structure is unsafe due to a weather-related incident, under which the ordinance allows repairs to be made even though deemed unreasonable through application of the reasonableness presumption. The presumption of demolition if the repair costs exceed 100 percent of the structure's true cash value is neither arbitrary nor unreasonable because it is not an absolute prohibition on making repairs. Because the circuit court did not rule on the procedural due process claim, the majority should not address it. Even if the issue was properly before the court, there was no procedural due process violation because the ordinance required, and plaintiffs received, notice of the demolition order, an opportunity to be heard at a hearing challenging the order, and an impartial decision-maker reviewing the decision.

1. CONSTITUTIONAL LAW — DUE PROCESS — SUBSTANTIVE DUE PROCESS — UNSAFE STRUCTURES — DEMOLITION ORDERS — REPAIRS.

Substantive due process protects individual liberty and property interests from arbitrary government actions regardless of the fairness of any implementing procedures; the right to substantive due process is violated when legislation is unreasonable and clearly arbitrary, having no substantial relationship to the health, safety, morals, and general welfare of the public; it is a permissible legislative objective for a city to demolish unsafe and dangerous structures to protect its citizens; a zoning code section violates substantive due process if it arbitrarily and unreasonably denies a property owner the option to repair an unsafe structure rather than ordering demolition with no option to repair simply on the basis that the city deems repair efforts to be economically unreasonable (US Const, Am XIV; Const 1963, art 1, § 17).

2. CONSTITUTIONAL LAW — DUE PROCESS — PROCEDURAL DUE PROCESS — UNSAFE
    STRUCTURES — REPAIRS.

    Procedural due process requires that a person may not be deprived
    of his or her life, liberty, or property without due process of law; a
    procedural due process violation occurs when the government
    unlawfully interferes with a protected property or liberty interest
    without providing adequate procedural safeguards; a procedural
    due process claim is established by showing that a recognizable
    property or liberty interest was deprived under the color of state
    law without due process of law; before a governmental body issues
    an order to demolish an unsafe structure, property owners must be
    given an option to repair the unsafe structure, regardless of
    whether doing so might be viewed as economically unreasonable
    (US Const, Am XIV; Const 1963, art 1, § 17).

*Essex Park Law Office, P.C.* (by *Dennis B. Dubuc*), and *John M. Shureb* for Leon V. and Marilyn E. Bonner.

*Law Office of Paul E. Burns* (by *Paul E. Burns* and *Bradford L. Maynes*) and *Michael M. Wachsberg* for the city of Brighton.

Before: MARKEY, P.J., and MURRAY and SHAPIRO, JJ.

MARKEY, P.J. Defendant-counterplaintiff, city of Brighton (the city), appeals by leave granted the trial court's order granting partial summary disposition in favor of plaintiffs. The trial court determined that § 18-59 of the Brighton Code of Ordinances (BCO) violates substantive due process when it permits the city to have an unsafe structure demolished as a public nuisance, without providing the owner the option to repair it, if the structure is deemed unreasonable to repair, which is presumed when repair costs would exceed 100 percent of the structure's true cash value as reflected in the assessment tax rolls before the structure became unsafe. We interpret the ordinance as only allowing the exercise of an option to repair when a property owner overcomes or rebuts

the presumption of unreasonableness by proving that it is economical to do so, regardless of whether the property owner is otherwise willing and able to timely make the necessary repairs. We conclude that this standard is arbitrary and unreasonable. We additionally find that while police powers generally allow the demolition of unsafe structures to achieve the legitimate legislative objective of keeping citizens safe and free from harm, the ordinance's exclusion of a repair option when city officials deem the repairs unreasonable on the basis of expenses that the owner is able and willing to incur bears no reasonable relationship to the legislative objective. This is true because demolition does not advance the objective of abating nuisances and protecting citizens to a greater degree than repairs, even unreasonable ones. Therefore, we hold that the ordinance violates substantive due process. Moreover, by not providing a procedure to safeguard an owner's right to retain property by performing what others might consider unreasonably expensive repairs, which would burden the city to a lesser extent than demolition, the city's ordinance violates procedural due process. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs own two residential properties located in downtown Brighton. There is a house on one parcel of property and a house with a garage or barn on the other. According to the city, the three structures have been unoccupied and largely ignored and unmaintained for over 30 years, representing the most egregious instances of residential blight in Brighton. The city's building and code enforcement official (hereafter "building official") informed plaintiffs in a letter that

the structures on the two properties constituted unsafe structures under the BCO[1] and public nuisances under Michigan common law. The building official cited a litany of alleged defects and code violations in regard to the condition of the structures. Plaintiffs were further informed that it had been determined that it was unreasonable to repair the structures as defined in BCO § 18-59, which provides in relevant part as follows:

> Whenever the city manager, or his designee, has determined that a structure is unsafe and has determined that the cost of the repairs would exceed 100 percent of the true cash value of the structure as reflected on the city assessment tax rolls in effect prior to the building becoming an unsafe structure, such repairs shall be presumed unreasonable and it shall be presumed for the purpose of this article that such structure is a public nuisance which may be ordered demolished without option on the part of the owner to repair.

Plaintiffs were ordered to demolish the structures with no option to repair within 60 days.

Plaintiffs appealed the determination to the city council pursuant to BCO § 18-61, which provides in pertinent part:

> An owner of a structure determined to be unsafe may appeal the decision to the city council. The appeal shall be in writing and shall state the basis for the appeal. . . . The owner or his agent shall have an opportunity to be heard by the city council at a regularly scheduled council meeting.

---

[1] BCO § 18-46 defines an "unsafe structure," setting forth a number of qualifying criteria. BCO § 18-47 makes it "unlawful for an owner or agent to maintain or occupy an unsafe structure." BCO § 18-48 requires those responsible for a structure to "take all necessary precautions to prevent any nuisance or other condition detrimental to public health, safety, or general welfare from arising thereon."

The city council may affirm, modify, or reverse all or part of the determination of the city manager, or his designee.

In preparation for the appeal, plaintiffs retained a structural engineer and various contractors to determine the repairs necessary to bring each structure into compliance with the applicable building codes. Plaintiffs subsequently filed affidavits signed by their retained engineer and contractors that addressed the condition of the structures relative to their professional field and provided cost estimates with respect to the proposed repairs. These individuals prepared drawings and repair plans and asserted that the structures were safe, structurally sound, and readily repairable. At a hearing before the city council, plaintiffs agreed to provide the building official with an expert's report and to allow city personnel access to the structures for purposes of exterior and interior inspections. The city council tabled the appeal pending the inspections. Subsequently, plaintiffs authorized their contractors to commence some repairs, and applications for building permits were submitted to the city. In a letter to plaintiffs, the building official denied the building-permit applications and accused plaintiffs of refusing to allow inspections of the structures and of failing to provide their expert's report, contrary to plaintiffs' agreement at the city council hearing. The building official also noted that the city had the right to inspect property before granting permits. Because they were denied building permits, plaintiffs did not complete any repairs.[2] Plaintiffs' alleged lack of cooperation and failure to abide by their agreements resulted in the building official obtaining administrative search warrants for

---

[2] A stop-work order was posted as to any repairs that may have been contemplated or initiated.

the properties. The search warrants authorized a search, inspection, and examination of the interior and exterior of each structure to determine whether they were in compliance with applicable laws, codes, and ordinances. After inspecting the structures pursuant to the administrative search warrants, the city's inspectors and experts identified extensive defects and code violations, requiring numerous repairs and the replacement of certain structural features. When litigation commenced, the city filed affidavits by these individuals. In communications to plaintiffs and the city council, the building official reiterated his position that the structures were unsafe, BCO § 18-46, that it would be unreasonable to repair them, BCO § 18-59, and that therefore, demolition was required.

The pending appeal to the city council was resumed, and hearings were conducted in which the council received the reports of inspectors, contractors, engineers, and other experts, along with written repair estimates, PowerPoint presentations, testimony, and oral arguments. The building official and his experts opined that the total cost to bring the structures up to code was approximately $158,000. The city determined the cash value of the structures at approximately $85,000. One of plaintiffs' experts opined that it would cost less than $40,000 per house to make the necessary repairs and bring the structures up to code.

In Resolution 09-16, Decision on Appeal, the city council adopted the findings set forth in the building official's inspection reports, accepted his repair estimates and agreed with the oral testimony and PowerPoint presentations the building official introduced. The city council determined that plaintiffs' reports and

cost estimates lacked credibility and that the structures had lost their status as nonconforming, single-family residential uses. The council concluded that the structures constituted "unsafe structures" under BCO § 18-46, that plaintiffs were in violation of BCO § 18-47 by owning and maintaining unsafe structures, and that the structures were unreasonable to repair and must be demolished under BCO § 18-59. The city council ordered plaintiffs to demolish the structures within 60 days.

Plaintiffs did not take any steps toward demolishing the structures within the 60-day period. Shortly before the 60-day period was set to expire, plaintiffs filed the instant action against the city, alleging, in a first amended complaint, a violation of procedural and substantive due process, a violation of equal protection, inverse condemnation or a regulatory taking, contempt of court, common-law and statutory slander of title, and a violation of Michigan housing laws under MCL 125.540.[3] Plaintiffs' constitutional challenges were predicated on the United States Constitution, 42 USC 1983, and the Michigan Constitution. After the complaint was filed, the city's building official, under the authority of BCO § 18-58, issued plaintiffs an order to show cause to appear before the city council where they would have the opportunity to present testimony and evidence as to why the structures should not be demolished. The order to show cause set forth an exhaustive list of defects and problems associated with the structures that rendered them "unsafe." The city council conducted a show-cause hearing in which plaintiffs participated. The council rejected plaintiffs' position

---

[3] Before the complaint in the case at bar was filed, plaintiffs had commenced a mandamus action against the city, which the trial court dismissed.

against demolition.[4] Again, the show-cause proceedings occurred after the lawsuit was commenced.

The city subsequently filed its own complaint in a separate action, requesting injunctive relief in the form of an order enforcing BCO § 18-59 and requiring demolition of the structures. The trial court consolidated the cases. Plaintiffs filed a motion for partial summary disposition with respect to their complaint, arguing that BCO § 18-59 was unconstitutional. The trial court denied the motion on procedural grounds, concluding that plaintiffs were required, but failed to submit, documentary evidence.[5] The trial court also denied the city's request for a preliminary injunction to demolish the structures, which the court found to be an improper

---

[4] In Resolution 09-26, the city council found that "the testimony and evidence presented [was] insufficient to show cause why the structure[s] should not be demolished for the reasons that that testimony and evidence was irrelevant and/or not credible, and that [plaintiffs] have, accordingly, not fulfilled their burden of proof." Resolution 09-26, in its written form, further indicated that plaintiffs were to be given approximately six months to "take any and all actions necessary to bring the [s]tructures into compliance with the 2006 Michigan Building Code." We note, however, that a transcript of the hearing in which the resolution was announced, recited, voted upon, and approved fails to include this provision. Resolution 09-26, in its written form, additionally authorized the city attorney to institute appropriate legal proceedings to seek demolition of the structures if the work was not completed in timely fashion. The transcript of the hearing, however, reflects that the council authorized the city attorney to immediately pursue legal proceedings seeking demolition. The transcript also indicates that two resolutions were prepared before the hearing: one that authorized litigation and one that authorized an "extension for repair." Given the surrounding circumstances and the events that transpired, it is clear that the city council did not allow plaintiffs an opportunity to make repairs. Evidently, after the hearing, the council mistakenly executed the wrong resolution.

[5] We note that the trial court granted partial summary disposition to the city on its motion relative to plaintiffs' claims for money damages based on a violation of the Michigan Constitution and in regard to the contempt of court and slander of title. Additionally, plaintiffs agreed to the dismissal of their claim under MCL 125.540 (enforcement agency's notice requirements for dangerous conditions).

request given the entirety of the proceedings pending before the court. Throughout the litigation, plaintiffs filed numerous motions seeking court authorization to make various repairs and to abate the alleged public nuisances. The motions were denied, although the court did permit plaintiffs to place a tarp on a roof and to close open and obvious access points. Eventually, plaintiffs renewed their motion for partial summary disposition, again arguing that BCO § 18-59 was unconstitutional on a variety of grounds, including a claim that the ordinance violated substantive due process. The trial court rejected plaintiffs' argument that BCO § 18-59 was unconstitutional because it constituted an improper delegation of legislative authority, and the court found that issues of fact existed on the constitutional argument that application of BCO § 18-59 resulted in a taking without just compensation. The trial court also ruled, however, that BCO § 18-59, on its face, violated substantive due process.[6]

The trial court determined that BCO § 18-59 violated substantive due process because it precluded property owners from having the opportunity to repair their property, which served no rational interest or purpose, was entirely arbitrary, and shocked the conscience. The trial court agreed with the city that the demolition of unsafe structures promoted the legitimate interest of public health and safety; however, that interest, the court stated, was not advanced by denying a property owner the chance to repair an unsafe structure. The court observed that if the owner repaired a structure and brought it up to code, the health and safety of the

---

[6] Plaintiffs presented, and the trial court ruled upon, myriad arguments on several subjects in the motion for partial summary disposition; however, we shall not address them as only the constitutionality of BCO § 18-59 is at issue on appeal.

public would be advanced. The trial court reasoned that the interest in the public's health and safety is equally advanced by demolition and by owner repairs that satisfy city standards. The court determined that giving a landowner an opportunity to repair his or her property would not inhibit a municipality's ability to protect the public health and safety. The trial court also indicated that Michigan law required giving a property owner a chance to repair prior to a demolition conducted for safety reasons. The court noted that there was an abundance of persuasive authority from other jurisdictions that found similar ordinances withholding the option to repair advanced no rational purpose and were arbitrary. The trial court concluded that the city "must cure this defect in the ordinance and must reissue a new demolition order under the revised ordinance before proceeding with any demolition of the properties." The court denied the city's motion for reconsideration. This Court granted the city's application for leave to appeal.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Kuznar v Raksha Corp*, 481 Mich 169, 175; 750 NW2d 121 (2008). We also review de novo constitutional issues as well as questions concerning the proper construction of an ordinance. *Kyser v Kasson Twp*, 486 Mich 514, 519; 786 NW2d 543 (2010).

When reviewing an ordinance, we apply the same rules applicable to the construction of statutes. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). "The goal of statutory construction, and thus of construction and interpreta-

tion of an ordinance, is to discern and give effect to the intent of the legislative body." *Id.* at 407-408. The words used by the legislative body provide the most reliable evidence of its intent. *Shinholster v Annapolis Hosp*, 471 Mich 540, 549; 685 NW2d 275 (2004). Unless otherwise defined, we assign the words in a municipal ordinance their plain and ordinary meanings, *Great Lakes Society*, 281 Mich App at 408, avoiding an interpretation that would render any part of an ordinance surplusage or nugatory, *Zwiers v Growney*, 286 Mich App 38, 44; 778 NW2d 81 (2009). Also, unless a different intent is manifest, the language used by the legislative body must be understood and read in its grammatical context. *Shinholster*, 471 Mich at 549. The legislative body is deemed to have intended the meaning clearly expressed in an ordinance's unambiguous language, which must be enforced as written. *Id.* " 'A necessary corollary of these principles is that a court may read nothing into an unambiguous [ordinance] that is not within the manifest intent of the [legislative body] as derived from the words of the [ordinance] itself.' " *Zwiers*, 286 Mich App at 44 (citation omitted).

## B. CONSTITUTIONAL DUE PROCESS PRINCIPLES

The state and federal constitutions guarantee that no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17; *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005). "Procedure in a particular case is constitutionally sufficient when there is notice of the nature of the proceedings and a meaningful opportunity to be heard by an impartial decision maker." *Id.* And, although the text of the Due Process Clauses provides only procedural protections, due process also has a substantive component that protects individual liberty

and property interests from arbitrary government actions regardless of the fairness of any implementing procedures. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 370; 803 NW2d 698 (2010); *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008). The right to substantive due process is violated when legislation is unreasonable and clearly arbitrary, having no substantial relationship to the health, safety, morals, and general welfare of the public.[7] *Lingle v Chevron USA, Inc*, 544 US 528, 541; 125 S Ct 2074; 161 L Ed 2d 876 (2005). In the context of government actions, a substantive due process violation is established only when "the governmental conduct [is] so arbitrary and capricious as to shock the conscience." *Mettler Walloon*, 281 Mich App at 198; see also *In re Beck*, 287 Mich App 400, 402; 788 NW2d 697 (2010), aff'd 488 Mich 6 (2010).

In *Kropf v Sterling Hts*, 391 Mich 139, 157; 215 NW2d 179 (1974), our Supreme Court discussed a substantive due process claim in the context of a zoning ordinance, stating:

> A plaintiff-citizen may be denied substantive due process by the city or municipality by the enactment of legislation, in this case a zoning ordinance, which has, in the final analysis, no reasonable basis for its very existence. The power of the city to enact ordinances is not absolute. It has been given power by the State of Michigan to zone and regulate land use within its boundaries so that the inherent police powers of the state may be more effectively implemented on the local level. But the state cannot confer upon the local unit of government that which it does not

---

[7] We note that this case presents a facial challenge to the ordinance. See *Hendee v Putnam Twp*, 486 Mich 556, 568 n 17; 786 NW2d 521 (2010) (distinguishing between facial and as-applied challenges and noting that a facial challenge attacks the very existence of an ordinance as infringing upon property rights).

have. For the state itself to legislate in a manner that affects the individual right of its citizens, the state must show that it has a sufficient interest in protecting or implementing the common good, via its police powers, that such private interests must give way to this higher interest.

A citizen is entitled to due process of law when a municipality, exercising its police power, enacts an ordinance that affects the citizen's constitutional rights. *Kyser*, 486 Mich at 521. In determining whether an ordinance enacted by a municipality comports with due process, the test employed is whether the ordinance bears a reasonable relationship to a permissible legislative objective. *Id.* When a municipal ordinance restricts the use of property, the issue is whether the exercise of authority entails an undue invasion of private constitutional rights without a reasonable justification in connection with the public welfare. *Id.* We begin with the presumption that an ordinance is reasonable and thus constitutionally compliant. *Id.* "[T]he burden is upon the person challenging . . . an ordinance to overcome this presumption by proving that there is no reasonable governmental interest being advanced by the zoning ordinance." *Id.* The property owner must demonstrate that the challenged ordinance arbitrarily and unreasonably affects the owner's use of his or her property. *Id.* An ordinance does not offend the Due Process Clause when it satisfies the reasonableness test; the ordinance must be reasonable or reasonably necessary for purposes of preserving the public health, morals, or safety.[8] *Id.* at 523, 529. An ordinance will be declared unconsti-

---

[8] The *Kyser* Court explained that while the standard of review for zoning regulations is characterized as a "reasonableness" test, it is analogous to the "rational basis" test for testing the constitutionality of legislation not involving suspect classifications or fundamental rights to which courts apply heightened or strict scrutiny. *Kyser*, 486 Mich at 522 n 2.

tutional only if it constitutes an arbitrary fiat or a whimsical ipse dixit, leaving no legitimate dispute regarding its unreasonableness. *Id.* at 521-522.

Although the trial court's ruling and the arguments of the parties are framed in the context of substantive due process, we find that the nature of the issues presented in this case also implicate procedural due process. The principle espoused by plaintiffs is that a property owner has the right, or must have the option or opportunity, to make repairs to a structure deemed unsafe by a municipality before the structure can be demolished or razed. Plaintiffs do not contend that the city lacks the general authority to demolish unsafe or dangerous structures; they instead argue that a property owner must be afforded the opportunity to repair an unsafe structure before the city orders it demolished. Plaintiffs' argument contains elements of procedural due process requiring notice, hearing, and a ruling by an impartial decision-maker, before the government infringes constitutionally protected property interests.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v Burch*, 494 US 113, 125; 110 S Ct 975; 108 L Ed 2d 100 (1990). " 'Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.' " *Id.* at 125-126 (citation omitted). Procedural due process differs from substantive due process in that "procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable [property] interests." *Bartell v Lohiser*, 215 F3d 550, 557 (CA 6, 2000). A procedural due

process violation occurs when the government unlawfully interferes with a protected property or liberty interest without providing adequate procedural safeguards. *Schiller v Strangis*, 540 F Supp 605, 613 (D Mass, 1982). To establish a violation of procedural due process, one must show that the action concerned a recognizable property or liberty interest, that there was a deprivation of that interest absent due process of law, and that the deprivation took place under the color of state law. *Id.* "A 'substantive due process' claim is, fundamentally, not a claim of procedural deficiency, but, rather, a claim that the state's conduct is inherently impermissible." *Id.* at 614.[9]

In *D&M Fin Corp v City of Long Beach*, 136 Cal App 4th 165, 174; 38 Cal Rptr 3d 562 (2006), the California Court of Appeal stated that "[w]hen a city threatens to demolish structures, due process requires that the city provide the property owner and other interested parties with notice, with the opportunity to be heard, and with the opportunity to correct or repair the defect before demolition." And, in *Hawthorne S & L Ass'n v City of Signal Hill*, 19 Cal App 4th 148, 159; 23 Cal Rptr 2d 272 (1993), quoting *Miles v Dist of Columbia*, 166 US App DC 235, 239; 510 F2d 188, 192 (1975), the court opined:

> "A municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health. However, that municipality must, before destroying a building, give the owner sufficient notice, a hearing and ample opportunity to demolish the building himself or to do what suffices to

___

[9] In contrast to procedural due process, substantive due process protects individual liberty and property interests from arbitrary government actions regardless how fairly implemented. *People v Sierb*, 456 Mich 519, 523; 581 NW2d 219 (1998); *Mettler Walloon*, 281 Mich App at 197.

make it safe or healthy; such a procedure is the essence of the governmental responsibility to accord due process of law."

Plaintiffs' position in this case that the ordinance denies them the right or an opportunity to repair prior to demolition can be equated to an argument that the ordinance lacks a necessary procedural safeguard or that it is procedurally deficient or inadequate. Plaintiffs do not contend that demolition of an unsafe structure is unlawful even when an option to repair is extended to the property owner by the municipality. Rather, plaintiffs' position is that a deprivation of a property interest by way of demolition is unjustified *if* an opportunity to correct any structural defects is not made available. Plaintiffs do not take the stance that demolition of unsafe structures is inherently impermissible. To some extent, the mere manner in which the issue is framed bears on whether plaintiffs' claim is one of substantive or procedural due process. Plaintiffs certainly contend that the demolition of unsafe structures "without a sound repair option" is inherently impermissible. As the court in *Schiller*, 540 F Supp at 614, noted, "[T]he line dividing 'procedural due process' from 'substantive due process' is not always bright, [and] it may be difficult in some cases to determine which is the proper characterization of the plaintiff's claim." Ultimately, we conclude that the ordinance infringes on plaintiffs' due process rights, whether denominated procedural or substantive, thereby making it unnecessary to determine which due process principle is actually embodied in plaintiffs' argument.

### C. DISCUSSION

We first carefully examine the language of BCO § 18-59 to determine and define its scope, its require-

ments, and its proper implementation. Again, BCO § 18-59, which is titled "Unreasonable repairs," provides in relevant part as follows:

> Whenever the city manager, or his designee, has determined that a structure is unsafe and has determined that the cost of the repairs would exceed 100 percent of the true cash value of the structure as reflected on the city assessment tax rolls in effect prior to the building becoming an unsafe structure, such repairs shall be presumed unreasonable and it shall be presumed for the purpose of this article that such structure is a public nuisance which may be ordered demolished without option on the part of the owner to repair.[10]

Accordingly, there must be an initial determination that a structure is indeed unsafe, and the definition of an "unsafe structure" is found in BCO § 18-46. The city's building official determined that the structures were unsafe under BCO § 18-46, and plaintiffs do not debate that conclusion for purposes of this appeal. Next, there must be a determination, which the building official in this case made as to all buildings, that the repair costs would exceed the true cash value of a structure as reflected in past assessment tax rolls when the structure was not characterized as unsafe. Once a determination is made that an unsafe structure exists and that the cost to repair exceeds the structure's value

---

[10] Under BCO § 18-52(a) and (b), the city must issue and serve a notice on an owner of a structure, or the owner's agent, that reflects a determination that the owner's structure is unsafe. BCO § 18-52(c)(3) provides that the notice must "[s]pecify the repairs and improvements required to be made to render the structure safe *or if the city manager, or his designee, has determined the structure cannot be made safe, indicate that the structure is to be demolished*[.]" (Emphasis added.) In situations in which the city allows an opportunity to repair an unsafe structure, the notice must "[s]pecify a reasonable time within which the repairs and improvements must be made or the structure must be demolished." BCO § 18-52(c)(4).

before it became unsafe, it is *presumed* that the repairs
are unreasonable and that the structure is a public
nuisance subject to demolition without the option to
repair. Therefore, the ordinance does not definitively
establish the unreasonableness of repairs, the existence
of a public nuisance, and the authority to order demo-
lition without option to abate the nuisance and repair
the structure. Rather, the ordinance merely gives rise to
these presumptions.[11]

"Most presumptions are rules of evidence calling for
a certain result in a given case unless the adversely
affected party overcomes it with other evidence. A
presumption shifts the burden of production or persua-
sion to the opposing party, who can then attempt to
overcome the presumption." Black's Law Dictionary
(8th ed). For purposes of our analysis, we shall assume
that the "presumed" language in BCO § 18-59 does not
create a conclusive, mandatory, absolute, or irrebut-
table presumption, which would only strengthen our
conclusion that the ordinance violates due process.
Under BCO § 18-59, a property owner may, regardless
of the fact that repair costs would exceed a structure's
true cash value, avail himself or herself of an opportu-
nity to overcome or rebut the presumption by showing
that making repairs would nonetheless be reasonable
under the circumstances. In turn, accomplishing the
repairs would abate any unsafe conditions negating the
presumption of public nuisance, thereby precluding a
demolition order. Conceivably, a property owner could
attempt to rebut the presumptions of BCO § 18-59 by
pleading the owner's case directly to the city manager

---

[11] Considering that the issue on appeal concerns repair rights, our focus
is more on the presumption that repairs are unreasonable, and therefore
not permitted, than on the presumption that the unrepaired structure is
a public nuisance.

or his designee, here the building official, but an attempt to show the reasonableness of repairs could presumably also be pursued in an appeal to the city council under BCO § 18-61. The city council contemplated, but ultimately rejected, a resolution which would have allowed plaintiffs six months to make the repairs necessary to avoid a demolition order.

Even though BCO § 18-59 can be interpreted to allow a property owner the opportunity to overcome or rebut the presumptions of that section, creating the possibility that an owner of a structure determined to be unsafe will be accorded an option to repair, such a construction of BCO § 18-59 still requires an owner to establish the reasonableness of making repairs. Stated otherwise, in order to overcome the presumption that allows the city to order demolition absent an option to repair, the property owner must show that making repairs is reasonable. We find this aspect of the ordinance to be constitutionally problematic and in violation of due process. The appeal section, BCO § 18-61, does not provide its own or a different standard; therefore, the city council in addressing an appeal would be constrained to also apply the reasonableness standard that governs BCO § 18-59. Such a standard prevents a property owner who has the desire and ability to make the necessary repairs in a timely fashion to render a structure safe, even when the cost of repairs exceeds the city-determined true cash value of the structure before it became unsafe, from doing so because the ordinance deems such repairs unreasonable.

We conclude that if the owner of an unsafe structure wishes to incur an expense that others might find unreasonable to repair a structure, bring it up to code, and avoid a demolition order, the city should not infringe upon the owner's property interest by forbidding

it. There may be myriad reasons why a property owner would desire to repair a structure under circumstances in which it is not economically profitable to do so, including sentimental, nostalgic, familial, or historic, which may not be measurable on an economic balance sheet. Ultimately, the owner's reasons for desiring to repair a structure to render it safe when willing and able even though costly, are entirely irrelevant and of no concern to the municipality.

We note that BCO § 18-59, by using the language "*may* be ordered" (emphasis added), gives the city manager or his designee the discretion to not order the demolition of a structure and to allow repairs even though the structure is unsafe and the repair costs exceed the structure's pertinent value. In other words, demolition is not mandated when it is unreasonable to make repairs. We find, however, that this discretionary language does not save the ordinance from constitutional challenge, considering that the ordinance places no constraints on the exercise of what is essentially unfettered decretion.

We hold that BCO § 18-59 violates substantive due process because it is arbitrary and unreasonable, constituting a whimsical ipse dixit; it denies a property owner the option to repair an unsafe structure simply on the basis that the city deems repair efforts to be economically unreasonable. When a property owner is willing and able to timely repair a structure to make it safe, preventing that action on the basis of the ordinance's standard of reasonableness does not advance the city's interest of protecting the health and welfare of its citizens. We do not dispute that a permissible legislative objective of the city under its police powers is to protect citizens from unsafe and dangerous structures and that one mechanism for advancing that

objective can entail demolishing or razing unsafe struc-
tures.[12] But BCO § 18-59 does not bear a reasonable
relationship to this permissible legislative objective.[13]
*Kyser*, 486 Mich at 521. There are two ways to achieve
the legislative objective, demolition or repair, either of
which results in the abatement of the nuisance or
danger of an unsafe structure. There is simply no sound
reason for prohibiting a willing property owner from
undertaking corrective repairs on the basis that making
such repairs is an unreasonable endeavor, given that
the repairs, similar to demolition, will equally result in
achieving the objective of protecting citizens from un-
safe structures.[14] If a property owner fails to make the

---

[12] Municipalities may exercise their legitimate police powers to abate a
public nuisance. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 272;
761 NW2d 761 (2008). There is a well-established exception to the
constitutional prohibition against takings without just compensation,
which provides that because no person has the right to utilize property in
a manner that creates a nuisance, the state, when asserting power to stop
a nuisance, has not taken anything. *Id.* Consequently, governmental
entities are not required to provide just compensation when they dimin-
ish or destroy a property's value to abate a public nuisance. *Id.*

[13] We note that BCO § 18-59 provides an exception when "a structure
is unsafe as a result of an event beyond the control of the owner, such as
fire, windstorm, tornado, flood or other Act of God." In such situations,
"the owner shall be given . . . reasonable time within which to make
repairs and the structure shall not be ordered demolished without option
on the part of the owner to repair." BCO § 18-59. Thus, even if the cost
of repairs exceeds the property's value, a right to repair exists when a
structure is made unsafe through events that the owner could not
control. Stated otherwise, repairs are permissible even though they are
otherwise unreasonable.

[14] We recognize that there may occasionally be unique circumstances in
which repair efforts cannot be allowed, despite a willingness by the
property owner to do so, such as where repairs necessary to meet code
requirements cannot be designed or cannot be accomplished in a safe or
timely manner. There may also be emergency situations, see BCO
§ 18-56, where immediate destruction is necessary to avoid an imminent
danger and repairs are not feasible. The instant action does not present
a unique or an emergency situation. Moreover, and importantly, the

necessary repairs within a reasonable timeframe, demolition can then be ordered. The city's restriction on plaintiffs' opportunity to repair the structures and right to protect their constitutionally recognized property interests from invasion has no reasonable relation to the public welfare. *Kyser*, 486 Mich at 521. The public welfare is safeguarded by the construction repairs, and the ordinance does not afford the public greater protection or safeguards by calling for demolition over repairs when making repairs is characterized as being unreasonable. Of course, the municipality has the authority to define the repairs necessary and to set a reasonable time limit for their completion. For the reasons set forth above, we conclude that BCO § 18-59 violates substantive due process.

We also determine that BCO § 18-59 does not provide adequate procedural safeguards to satisfy the Due Process Clause. Before potentially depriving plaintiffs or any city property owners of their constitutionally protected property interests through demolition predicated on a determination that a structure is unsafe, the city was constitutionally required to provide plaintiffs with a reasonable opportunity to repair the unsafe structure, regardless of whether doing so might be viewed as unreasonable because of its cost. In addition to notice, a hearing, and an impartial decision-maker, which are provided for in § 18 of the BCO, the city should have also provided for a reasonable opportunity to repair an unsafe structure, limited only by unique or emergency situations.[15] Precluding an opportunity to repair on the basis that it is too costly in comparison

reasonableness standard employed in BCO § 18-59 focuses on economic and financial reasonableness because the ordinance is predicated on the examination of repair costs and property valuations.

[15] See n 14 *supra*.

with a structure's value or that making repairs is otherwise unreasonable can result in an erroneous and unconstitutional deprivation of a property interest, i.e., a deprivation absent due process of law. Giving a property owner the procedural protection of a repair option is the only way the city's ordinances could withstand a procedural due process challenge.

Due process is a flexible concept, but its essence is fundamental fairness. *Reed*, 265 Mich App at 159. The procedures that are constitutionally required in a particular case are determined by examining (1) the private interest at stake or affected by the governmental action, (2) the risk of an erroneous deprivation of the interest under existing procedures and the value of additional safeguards, and (3) the adverse impact on the government of requiring additional safeguards, including the consideration of fiscal and administrative burdens. *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993), citing *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976). The nature of the private interest at stake in this case is substantial—plaintiffs' property interest as owners of three structures. Next, the risk of an erroneous deprivation of the property interest under BCO § 18-59 is significant as it allows for the demolition of unsafe structures when repairs are considered unreasonable despite an owner's willingness and ability to make timely repairs. The added safeguard of a repair option would eliminate the risk of an erroneous deprivation of the property interest. Finally, adding the safeguard of a repair option would minimally affect the city's interest in the health and welfare of its citizens, as well as not cause any fiscal or administrative burdens beyond those that would be associated with demolition of the property. Under BCO § 18-59, the cost to the city if it demolishes an unsafe structure may be assessed as a lien against the real property. If repairs are under-

taken by a property owner pursuant to a repair option, the owner and not the city bears the cost of those repairs, and the city's only function would be to determine what repairs are necessary and monitor their timely completion. With forced demolition by the city, the city would incur the costs and then have to seek reimbursement of expenses incurred, possibly requiring lien-foreclosure proceedings. In sum, on review of the pertinent factors in the present case, we find that procedural due process requires a property owner to have an option to repair a structure determined to be unsafe except in unique and emergency situations demanding immediate action.

Court decisions in other jurisdictions, while not binding precedent, provide persuasive support for our holding. See *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 639 n 15; 732 NW2d 116 (2007). In *Washington v City of Winchester*, 861 SW2d 125 (Ky App, 1993), the appellant-owner challenged a circuit court order that required her to demolish a building that had numerous building code violations. A building inspector initially ordered demolition, which decision was appealed to a city appeals board. The appeals board delayed demolition to allow a determination regarding the value of the building and the cost of repairs necessary to bring the building into compliance with the building code. Subsequently it was determined that the estimated cost to repair the building exceeded 100 percent of the building's appraised value. On the basis of this information, the appeals board affirmed the inspector's demolition order, and the circuit court then affirmed the decision by the appeals board. On appeal to the Kentucky Court of Appeals, the appellant building owner argued that she should have been given the opportunity to bring the building into compliance with the code through repairs. *Id.* at 126. Two separate code provisions were relevant, and they provided:

PM-111.1: The code official shall order the owner of any premises upon which is located any structure or part thereof, which in the code official's judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, unsanitary or otherwise unfit for human habitation, occupancy or use, and so that such structure would be unreasonable to repair the same, to raze and remove such structure or part thereof; or if such structure can be made safe by repairs, to repair and make safe and sanitary or to raze and remove at the owner's option[.]

PM-111.2: Whenever the code official determines that the cost of such repairs would exceed 100% of the current value of such structure, such repairs shall be presumed unreasonable and it shall be presumed for the purpose of this section that such structure is a public nuisance which shall be ordered razed without option on the part of the owner to repair. [*Id.*]

The appellate court agreed with the building owner that she should have been given the option to repair the building within a reasonable time. *Id.* The court, citing *Johnson v City of Paducah*, 512 SW2d 514, 516 (Ky, 1974), held that "the exercise of the city's police power is for the protection of the public, but the means of its implementation may extend no further than public necessity requires." *Washington*, 861 SW2d at 126. The court noted that the failure to provide a property owner the option of repair was arbitrary, that the government did not have absolute power over private property, and that improperly requiring demolition absent compensation constituted a taking. *Id.* at 126-127.[16] Finally, the Kentucky court observed:

---

[16] The court ultimately determined that the code provision regarding repair costs and property values was unconstitutional under § 2 of the Kentucky Constitution. *Washington*, 861 SW2d at 126. Section 2 of the Kentucky Constitution provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." This principle is essentially

[J]ust as the cost of . . . [code] compliance is a property
owner's problem, the method of compliance is also the
property owner's decision. It's his/her money and far be it
from the [c]ity to say how a reasonable person should spend
his/her money. . . . [A]s free men and women, we can spend
our own money as we see fit, that if we want to pour
endless dollars, sweat, etc., into some historic building, or
personally appealing project, we may—even if the ultimate
cost would be ten fold over the cost of demolition and
rebuilding. So, too, with the [c]ity . . . and the appellant
herein, if she wants to pour huge sums of money into her
unfit building[], she has that option. A reasonable person
may very well choose demolition, but it's her money and
her choice. [*Id.* at 127.]

We agree with these sentiments and observations.
While BCO § 18-59 varies slightly from the code provi-
sion at issue in *Washington*, we adopt the principles
espoused in *Washington* for purposes of our analysis of
BCO § 18-59.

In *Herrit v City of Butler Code Mgt Appeal Bd*, 704
A2d 186 (Pa Commw, 1997), the Pennsylvania Com-
monwealth Court addressed the constitutionality of a
code provision identical to that at issue in *Washington*.
The appellant, whose property was found to be unsafe
and a public nuisance, maintained that the code provi-
sion was unconstitutional because it did not give him
the opportunity to repair his property before demoli-
tion. *Id.* at 188. The court initially pointed out that the
purpose of the demolition notice was to provide a
property owner a reasonable amount of time to make
repairs to abate the dangerous condition. *Id.* at 189.
The court, relying on *Washington*, 861 SW2d at 125,
concluded that the code provision was unconstitutional.
It reasoned that the provision was not reasonably

embodied in Const 1963, art 1, § 17, which provides that "[n]o person
shall be . . . deprived of life, liberty or property, without due process of
law."

related to the health, safety, or general welfare of the public, because there was no rational basis not to permit the appellant the option to abate the nuisance. *Id.* The Pennsylvania court concluded that if the appellant wanted "to spend unreasonable amounts of money to bring his [p]roperty into compliance, that [was] only his concern." *Id.*

As in *Herrit* and *Washington*, we conclude that whether it is economically reasonable for a property owner to repair an unsafe or dangerous structure is irrelevant and cannot serve as the basis to deny a property owner an opportunity to repair a structure in order to comply with applicable code provisions.[17]

In considering an ordinance that permitted the demolition of a structure when the cost to comply with code requirements exceeded 50 percent of the structure's present value, the Georgia Court of Appeals ruled in *Horne v City of Cordele*, 140 Ga App 127, 130-131; 230 SE2d 333, 335-336 (1976):

> The vice of the ordinance under consideration is that it flatly permits uncompensated destruction of the owner's property where the cost of repair would exceed 50 percent of the value of the structure unrepaired. . . .

> \* \* \*

> In the present case it appears that the owner twice applied for and was refused building permits in order to repair the house under consideration here. We do not find it necessary to reach the question of whether the owner was in good or bad faith in applying, or whether the

---

[17] We acknowledge a contrary result in *City of Appleton v Brunschweiler*, 52 Wis 2d 303; 190 NW2d 545 (1971), but find that case unpersuasive because the court addressed the issue as one of statutory interpretation and only superficially mentioned possible constitutional problems.

building inspector was in good or bad faith in refusing the applications, or to pass on the remaining enumerations of error. Our holding is that any ordinance which authorizes demolition of a structure within the city without compensation to the owner merely because the cost of repair exceeds the value of the structure or any percentage therefof, without first allowing opportunity to repair (and, if necessary, providing for discovery of the criteria which must be met to bring the structure up to a minimum standard) is unconstitutional and void.

In *Horton v Gulledge*, 277 NC 353; 177 SE2d 885 (1970), overruled in part on other grounds by *State v Jones*, 305 NC 520; 290 SE2d 675 (1982), the North Carolina Supreme Court held that under its state constitutional version of the Due Process Clause, a city could not rely on an ordinance to order the demolition of unsafe structures without opportunity of repair when the cost to do so would exceed 60 percent or more of an unrepaired structure's value. The court, in finding a constitutional violation, noted that the city did not assert that the structure could not be made code compliant if it were to be repaired or find the existence of an imminent threat to the safety of persons or property that required the immediate destruction of the structure. *Id.* at 360. The court reasoned that the state's " 'police power does not include power arbitrarily to invade property rights.' " *Id.* at 363 (citation omitted). Further, "[p]olice regulation of the use or enjoyment of property rights can only be justified by the presence of a public interest, and such rights may be limited only to the extent necessary to subserve the public interest.' " *Id.* (citation omitted). Thus, the court concluded that when a structure can be repaired, it would be arbitrary and unreasonable for the city to require its destruction without first giving the owner a reasonable opportunity to remove the threat to the public health, safety and welfare by completing the necessary repairs. *Id.*

The case of *Village of Lake Villa v Stokovich*, 211 Ill 2d 106; 810 NE2d 13 (2004), in which the court found constitutional a statute permitting a municipality to file a complaint in court to seek the demolition of a dangerous and unsafe building after giving notice of the need to put the building in a safe condition, is a bit more difficult to assess. The property owners in that case agreed that the provision was intended to serve a legitimate governmental interest, but they argued that the cost limitation on the right to repair in the statute was arbitrary, unreasonable, and not rationally related to the governmental interest, citing many of the cases we have noted. The Illinois Supreme Court concluded that the cases cited by the property owners were inconsequential "because, in each case, the state statute or local ordinance found unconstitutional allowed an officer of the municipality to issue an order of demolition." *Id.* at 126. The statute at issue did not permit a municipal officer to order demolition; rather, it required the municipality to "give at least 15 days notice to the property owner of the need to 'put the building in a safe condition or to demolish it,' " affording some time for repairs. *Id.* at 127 (citation omitted). Only after the notice was issued could the municipality seek a demolition order in circuit court, where it had the burden of proving that the building was "dangerous and unsafe" or "uncompleted and abandoned." *Id.* The court could order demolition if substantial reconstruction was necessary to correct defects or if a structure was beyond reasonable repair, taking into consideration repair costs. *Id.* at 128. The Illinois court then concluded that the statute passed constitutional muster because

[it] is entirely reasonable and protects the rights of the property owner while permitting the municipality to deal

expeditiously with threats to the public health and safety. [The statute] makes a reasonable distinction between properties that are readily repairable and those that are not. The statute guarantees a property owner the opportunity to make repairs, either before or after an adjudication of "dangerous and unsafe," if the property is readily repairable. If, however, the property is in need of substantial reconstruction to render it safe, a property owner who is willing to undertake such a project must obtain the necessary permits and undertake repairs promptly upon receiving notice. The owner of such a property who does not promptly undertake repairs, but instead chooses to contest whether the building is dangerous and unsafe and to litigate the question of whether the building is readily repairable, runs the risk that he will lose on the merits and an order of demolition will issue. [*Id.* at 130.]

We read *Stokovich* as upholding the constitutionality of the statute because it affords property owners the opportunity to commence the process of necessary repairs during the 15-day notice period. In the instant action, BCO § 18-59 gives a municipal officer the authority to order demolition, and BCO § 18-52(c)(3) allows the notice to contain a statement that the structure is to be demolished without the option to make repairs. Indeed, the building official, in notifying plaintiffs, stated that he had determined that the structures were unsafe and not reasonable to repair, and he ordered demolition within 60 days. Accordingly, the ordinance at issue in this case is distinguished from the statute in *Stokovich*.

Finally, we note that our own Supreme Court, cautioning that a remedy should not be greater than necessary to achieve a desired result, has stated that "something less than destruction of the entire building should be ordered where such will eliminate the danger or hazard." *State Police Comm'r v Anderson*, 344 Mich 90, 96; 73 NW2d 280 (1955).

### D. RESPONSE TO THE DISSENT

We find it necessary to address some of the arguments posed by our dissenting colleague. With respect to the criticism that procedural due process did not serve as a basis for the trial court's ruling and that it is not argued on appeal, we conclude that for the reasons stated earlier, procedural due process principles are implicated and need to be examined and applied in order to properly resolve this appeal. The failure to offer correct solutions to a controlling legal issue does not limit the ability of this Court "to probe for and provide the correct solution." *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002). "[A]ddressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle." *Id.*

In regard to procedural due process, the dissent criticizes our ruling on the grounds that requiring a reasonable opportunity to repair is not a matter of process or procedure and that the procedural due process rights to notice, a hearing, and an impartial decisionmaker are satisfied under the BCO, with nothing more being required. As indicated previously in this opinion, an option-to-repair requirement, incorporated as part of a razing or demolition ordinance relative to nuisances and unsafe structures, can logically be viewed as a *procedural* mechanism or safeguard comparable to notice, hearing, and impartiality mandates. See *D&M Fin Corp*, 136 Cal App 4th at 174; *Hawthorne S & L*, 19 Cal App 4th at 159; *Miles*, 166 US App DC at 239. At the same time, the matter concerning an option to repair also has significant substantive attributes in relationship to due process protections, and the cases that we discussed earlier dealt with the issue of a repair option within the analytical framework of

either procedural or substantive due process; there were varied approaches as to which due process principle was applicable. Because of this overlap, and for purposes of providing a thorough and complete analysis, it is incumbent upon us to discuss procedural and substantive due process principles.

Next, as to the dissent's claim that plaintiffs were accorded procedural due process by way of notice, a hearing, and an impartial decisionmaker, it must be emphasized that procedural due process is not always satisfied in full simply because notice, a hearing, and an impartial decisionmaker were provided. In *Greenholtz v Inmates of the Nebraska Penal & Correctional Complex*, 442 US 1, 12-13; 99 S Ct 2100; 60 L Ed 2d 668 (1979), the United States Supreme Court explained:

> It is axiomatic that due process "is flexible and calls for such procedural protections as the particular situation demands." The function of legal process, as that concept is embodied in the Constitution, . . . is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. [Citations omitted.]

Notice and an opportunity to be heard are "the most *basic* requirements of procedural due process." *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (emphasis added). "The *fundamental* requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 US at 333 (emphasis added; citation omitted). The *Mathews* Court observed that, "unlike some legal rules," due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Id.* at 334 (quotation marks and citation omitted). "[T]he require-

ments for minimum due process may vary depending on the context." *Commonwealth v Brown*, 426 Mass 475, 482; 688 NE2d 1356 (1998). The "essential" elements of due process, i.e., "rudimentary" due process, require notice and a hearing. *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 271; 566 NW2d 514 (1997). Accordingly, there can be instances and situations in which procedural due process requires more than the minimum procedures noted by the dissent. And under the particular circumstances of this case and the *Mathews* factors, which we thoroughly analyzed earlier, we conclude that to satisfy procedural due process rights, an ordinance pertaining to the demolition of unsafe structures must include a provision that allows a property owner to exercise an option to repair, subject, of course, to reasonable limitations.

The dissent criticizes our reliance on *Washington*, 861 SW2d 125, *Johnson*, 512 SW2d 514, *Herrit*, 704 A2d 186, and *Horne*, 140 Ga App 127, arguing that they do not support our procedural due process ruling. We did not cite these cases with procedural due process specifically in mind; they were cited for their general due process analysis, and they tend to rely on substantive due process principles. These cases strongly support our finding of a substantive due process violation. The cases that we did expressly cite on the issue of procedural due process, *D&M Fin Corp*, 136 Cal App 4th 165, *Hawthorne S & L*, 19 Cal App 4th 148, and *Miles*, 166 US App DC 235, are not mentioned by the dissent.

The dissent concludes that one of the reasons that there is no constitutional violation is that a set of factual circumstances exist under which the ordinance is constitutional, i.e., when a structure is rendered unsafe due to events beyond the owner's control, such as weather-related events, in which case an option to

repair is expressly provided. See BCO § 18-59. We acknowledged in footnote 13 of this opinion that there is a provision in BCO § 18-59 that allows repairs for structures damaged by events beyond an owner's control, and we recognize that the fact that an ordinance might operate in an unconstitutional manner under some conceivable circumstances is insufficient to find it unconstitutional. See *Council of Orgs & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 568-569; 566 NW2d 208 (1997) (noting that if any factual situation can be conceived of that would sustain an act in the face of a constitutional challenge, the existence of that situation at the time of enactment must be assumed). The problem with the dissent's argument is that we 'are *not* addressing the constitutionality of the ordinance language in BCO § 18-59 concerning weather-damaged, unsafe structures; we are *not* finding that provision unconstitutional. Instead, we are solely finding unconstitutional the language or provision in BCO § 18-59 that deals with all other unsafe structures. An analogy is the best way to point out the flaws in the dissent's position. Under the dissent's reasoning, a statute that, for example, precludes application of the Fourth Amendment when brick houses are to be searched would be rendered constitutional, which conclusion is obviously legally unsound, if a different or additional section in the same statute required, consistent with constitutional principles, contemplation of the Fourth Amendment when all other types of houses are to be searched. This is nonsensical. The principles alluded to in *Council of Orgs*, 455 Mich at 568-569, simply mean, as applied here, that if there is a set of circumstances under which the language actually being addressed, i.e., the language regarding unsafe structures as caused or created by events within the control

of an owner, can be found constitutional, that language will survive a facial constitutional challenge.

The preceding argument naturally leads to the dissent's primary argument, made in the context of both procedural and substantive due process, that BCO § 18-59 is constitutional because an option to repair remains a possibility, even in regard to blameworthy owners, where BCO § 18-61 allows an appeal to the city council wherein the presumption created by BCO § 18-59 can be overcome and the council can allow the owner an opportunity to make repairs. We earlier acknowledged that an owner can appeal to the city council and, although the dissent does not mention it, we even noted that a property owner could attempt to overcome the presumption by pleading his or her case directly to the city manager or the manager's designee under BCO § 18-59. However, and this point is *not* addressed by the dissent despite its being the linchpin of our holding, in order to overcome the presumption—a presumption that repairs are *unreasonable*—when appealing to the city council or pleading to the city manager, the property owner would necessarily have to establish that the act of making repairs is *reasonable* before being granted an opportunity to make repairs. The constitutional defect is the reasonableness requirement associated with repairs; a property owner should be entitled to make repairs even if others would find it economically unreasonable to do so. The city council rejected plaintiffs' request to make repairs, finding, in part, that it was unreasonable to repair the structures.

BCO § 18-59 is implicated when a determination has been made that a structure is unsafe and that repair costs would exceed 100 percent of the structure's earlier true cash value. These determinations implicate the presumption that engaging in repairs is unreasonable, which presumption is necessarily tied to and impacts

the following presumption that the structure is a public nuisance, subjecting the property to an order of demolition. The presumptions are intertwined and the public-nuisance presumption is dependent on the unreasonable-to-repair presumption because if repairs are not permitted due to a failure to overcome the unreasonable-to-repair presumption by a showing that repairs are indeed reasonable, a structure would remain in a state of disrepair and would thus presumably be a public nuisance.[18] But if the unreasonable-to-repair presumption were overcome and repairs were permitted, the public-nuisance presumption would evaporate and become irrelevant, as the repairs would make the structure safe and obviate any nuisance. Accordingly, the reasonableness requirement as to repairs, which we find unconstitutional, actually permeates the entire process under BCO § 18-59 and then carries over to an appeal under BCO § 18-61.[19]

---

[18] Conceivably, a property owner could attempt to overcome the public-nuisance presumption by showing that although the structure is unsafe and no repairs are to be made, the structure is nevertheless not a public nuisance. Showing a desire or wish to repair would have no bearing on or relationship to overcoming the public-nuisance presumption.

[19] We note that it is even arguable that BCO § 18-61 only allows an appeal of an unsafe-structure determination where it provides, "An owner of a structure determined to be unsafe may appeal the decision to the city council." Again, the presumptions in BCO § 18-59 only arise after it is determined that a structure is unsafe *and* the cost of repairs exceeds value. Therefore, if an owner simply wants an opportunity to repair and accepts that his or her structure is unsafe and that repair costs exceed value, or the owner cannot prove otherwise, one could reasonably construe BCO § 18-61 as not even permitting the owner to challenge the presumptions created by BCO § 18-59 in an appeal to the city council, as the council could only entertain a determination that a structure was unsafe. The language in BCO § 18-61 does not address appealing a demolition determination in general. If a property owner could show that a structure is safe, the whole issue of repairs and an option to repair becomes moot given that demolition could not be ordered under BCO § 18-59 absent a finding that a structure is unsafe. The fact that the city

In sum, we respectfully disagree with the dissenting opinion.

### III. CONCLUSION

We interpret BCO § 18-59 as only allowing the exercise of an option to repair when a property owner overcomes or rebuts the presumption of economic unreasonableness, regardless of whether the property owner is otherwise willing and able to timely make the necessary repairs. We conclude that this standard is arbitrary and unreasonable. While police powers generally allow the demolition of unsafe structures to achieve the legitimate legislative objective of keeping citizens safe, the ordinance's exclusion of a repair option when repairs are deemed economically unreasonable bears no reasonable relationship to this legislative objective. Demolition does not advance the objective of abating nuisances and protecting citizens to a greater degree than repairs, even ones more costly than the present value of the structure and which an owner is willing and able to timely incur. Therefore, we hold that the ordinance violates substantive due process. Moreover, by not providing procedural safeguards in the form of an option to repair when a property owner's desire to repair could be viewed as unreasonable and lead to the unlawful deprivation of a constitutionally protected property interest, and which safeguard would burden the city to a lesser extent than demolition, the city's ordinance also violates procedural due process.

We affirm. As the prevailing parties, plaintiffs may tax costs pursuant to MCR 7.219(A).

---

council heard plaintiffs' appeal and considered a repair option in this case does not mean that the council actually had the jurisdiction or the authority to do so, and the council could theoretically decline to hear future cases of a similar nature based on the language in BCO § 18-61.

SHAPIRO, J., concurred with MARKEY, P.J.

MURRAY, J. (*dissenting*). The trial court held that Brighton City Ordinance § 18-59 was facially unconstitutional on the basis that the ordinance's presumption, that an unsafe structure with an estimated repair cost of 100 percent of the structure's predeteriorated condition value should be demolished, violated plaintiffs' right to substantive due process. The majority's decision to affirm that decision is in error because there are circumstances under which the ordinance is valid. Additionally, the majority should not address whether this same section violates plaintiffs' rights to procedural due process, as the trial court did not rule on that issue. And, even if it were an issue properly before us, the ordinance does not violate plaintiffs' rights to procedural due process under the United States Constitution. I therefore lodge this dissent.

## I. PROCEDURAL DUE PROCESS

As the majority notes, the trial court held BCO § 18-59 unconstitutional as a violation of plaintiffs' rights to substantive due process under the Fourteenth Amendment to the United States Constitution. That was the precise and only constitutional basis for the trial court's ruling that set aside the ordinance, and that is the only ruling challenged by defendant on appeal. We should limit our review to the decision rendered below and challenged on appeal, and proceed no further. *Candelaria v B C Gen Contractors, Inc*, 236 Mich App 67, 83; 600 NW2d 348 (1999).[1] The majority

---

[1] The trial court did address plaintiffs' argument that defendant's decision that plaintiffs lost their *nonconforming use* status violated procedural due process. However, the court ruled that a genuine issue of material fact existed, and defendant did not appeal that ruling.

correctly cites to *Mack v Detroit*, 467 Mich 186, 207-208; 649 NW2d 47 (2002), for the proposition that a court may raise and decide an issue not raised by any party but that otherwise falls within a broader issue raised by a party. My concern, however, is utilizing our discretion to do so, for "[a]s any casual reader of the Michigan Appeals Reports will recognize, we quite frequently inform parties that we will not address an issue not raised or decided by the trial court, on the basis that it is not properly preserved." *People v Michielutti*, 266 Mich App 223, 230; 700 NW2d 418 (2005) (MURRAY, J., concurring in part and dissenting in part), rev'd in part on other grounds 474 Mich 889 (2005), citing *Adam v Sylvan Glynn Golf Course*, 197 Mich App 95, 98; 494 NW2d 791 (1992), and *People v Stacy*, 193 Mich App 19, 28; 484 NW2d 675 (1992). See, also, *People v Byrne*, 199 Mich App 674, 677; 502 NW2d 386 (1993) ("We generally do not address the merits of unbriefed issues."). But, because the majority has spent a good deal of time addressing this issue, my analysis and conclusion—that the ordinance in every way survives this facial procedural due process clause challenge—follows.

Before getting to the merits, it is vital to keep in mind several important principles of judicial review. First, all courts must exercise great caution before utilizing the judicial power to declare a law unconstitutional. *Council of Orgs & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 570; 566 NW2d 208 (1997). Indeed, we presume that an ordinance is constitutional, *In re Harrand*, 254 Mich 584, 589; 236 NW 869 (1931),[2] and therefore the party challenging the constitutional

---

[2] We make this presumption because of "our recognition that elected officials generally act in a constitutional manner when regulating within their particular sphere of government," *Truckor v Erie Twp*, 283 Mich App 154, 162; 771 NW2d 1 (2009), which clearly the Brighton City Council was doing when enacting the ordinances at issue.

validity of the law bears a heavy burden. *Houdek v Centerville Twp*, 276 Mich App 568, 573; 741 NW2d 587 (2007).

Second, as the majority notes, this is a facial challenge to the constitutionality of the ordinance. We have repeatedly made clear that the party bringing a facial challenge must satisfy an " 'extremely rigorous standard.' " *Keenan v Dawson*, 275 Mich App 671, 680; 739 NW2d 681 (2007), quoting *Wayne Co Bd of Comm'rs v Wayne Co Airport Auth*, 253 Mich App 144, 161; 658 NW2d 804 (2002). A facial challenge attacks the very existence of the ordinance, requiring plaintiffs to establish that "the mere existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market." *Hendee v Putnam Twp*, 486 Mich 556, 589; 786 NW2d 521 (2010) (CORRIGAN, J., *concurring*) (quotation marks and citation omitted). Because a facial challenge attacks the ordinance itself, as opposed to how it is applied, a court must uphold the law if there are *any* circumstances under which it could be valid. *Keenan*, 275 Mich App at 680. In other words, even if facts can be conjured up that would make the law arguably unconstitutional, "if any state of facts reasonably can be conceived that would sustain [an ordinance]," those facts must be assumed and the ordinance upheld. *Council of Orgs*, 455 Mich at 568 (quotation marks and citation omitted). And, because this is a facial challenge, the actual facts surrounding plaintiffs' case are irrelevant. *Yates v Norwood*, 841 F Supp 2d 934, 938 n 8 (ED Va, 2012), citing *Forsyth Co, Ga v Nationalist Movement*, 505 US 123, 133 n 10; 112 S Ct 2395; 120 L Ed 2d 101 (1992).

With these important principles guiding the decision, the next question is whether ordinances BCO §§ 18-59

and 18-61 are facially unconstitutional under the Due Process Clauses of the United States Constitution.[3] With respect to the procedural component of these clauses, the focus is on—not surprisingly—ensuring that persons receive adequate *procedural protection* from government decisions that could deprive them of their property. See, generally, *Gorman v Univ of Rhode Island*, 837 F2d 7, 12 (CA 1, 1988). Specifically, the federal courts have held that the "fundamental require-ment of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v Eldridge*, 424 US 319, 333; 96 S Ct 893; 47 L Ed 2d 18 (1976), quoting *Armstrong v Manzo*, 380 US 545, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965). See also *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 213-214; 761 NW2d 293 (2008) (procedural due process requires notice, an opportunity to be heard before an impartial decision-maker, at a meaningful time and in a meaningful manner).

To be meaningful, the opportunity to be heard must occur before the person is permanently deprived of any significant property interest. *Cleveland Bd of Ed v Loudermill*, 470 US 532, 542; 105 S Ct 1487; 84 L Ed 2d 494 (1985); *Mathews*, 424 US at 333. The extent of the hearing constitutionally required varies, and depends on an evaluation of the following:

---

[3] The federal due process clause that applies to the States is contained in the Fourteenth Amendment to the United States Constitution, and provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" US Const, Am XIV, § 1. Although the constitutional language only references process, *People v Sierb*, 456 Mich 519, 522-523; 581 NW2d 219 (1998), the United States Supreme Court has held that there is both a procedural and substantive part to the Fourteenth Amendment, *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 197; 761 NW2d 293 (2008). As noted, the trial court's ruling was based exclusively on the substantive requirements of the federal due process clause.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Mathews*, 424 US at 335.]

The two ordinances at issue are BCO §§ 18-59 and 18-61. BCO § 18-59 provides in relevant part as follows:

Whenever the city manager, or his designee, has determined that a structure is unsafe and has determined that the cost of the repairs would exceed 100 percent of the true cash value of the structure as reflected on the city assessment tax rolls in effect prior to the building becoming an unsafe structure, such repairs shall be presumed unreasonable and it shall be presumed for the purpose of this article that such structure is a public nuisance which may be ordered demolished without option on the part of the owner to repair.

If, as in this case, the city manager orders a building demolished, a party can—as plaintiffs did here—appeal that determination to the city council pursuant to BCO § 18-61, which provides in pertinent part:

An owner of a structure determined to be unsafe may appeal the decision to the city council. The appeal shall be in writing and shall state the basis for the appeal. . . . The owner or his agent shall have an opportunity to be heard by the city council at a regularly scheduled council meeting. The city council may affirm, modify, or reverse all or part of the determination of the city manager, or his designee.

The majority acknowledges that these ordinances provide persons with notice,[4] an opportunity to be heard

---

[4] Another section of the ordinance spells out the detailed contents for the notice and how and when it is to be served upon the property owner. BCO § 18-52.

at a hearing before city council, and a decision from an impartial decision-maker. Recognizing that the ordinances provide notice and an opportunity to be heard before an impartial decision-maker should preclude any facial challenge to the ordinances based on procedural due process, especially when the *procedures* themselves are not alleged to be deficient. See, e.g., *English v Dist of Colombia*, 815 F Supp 2d 254, 266 (D DC, 2011) (dismissing procedural due process claim when the plaintiff was afforded predeprivation notice of the nature of the dispute, and an opportunity to be heard); *American Towers, Inc v Williams*, 146 F Supp 2d 27, 33 (D DC, 2001) (holding the same).

However, according to the majority, providing persons with notice, a full hearing before city council, and an impartial decision-maker is not enough to satisfy procedural due process. Instead, the majority holds that "the city should have also provided for a reasonable opportunity to repair an unsafe structure . . . ." This position is not sustainable. For one, the majority's focus is on the standards to be applied by the council (whether the council *must* allow a homeowner the option to repair when the cost exceeds 100 percent of the structure's value), as opposed to the *process* provided by the ordinance to persons who are contesting an inspector's decision. And, as set forth above, procedural due process is concerned only with the procedures employed by the government to allow the citizen to be heard before being deprived of his property. *Gorman*, 837 F2d at 12.

Additionally, the majority's analysis does not adhere to the standards governing facial challenges. Specifically, we must uphold the ordinances as long as there is any set of circumstances that would make the ordinances constitutional, *Keenan*, 275 Mich App at 680,

and the majority recognizes that under the ordinances as written city council could allow an owner to make repairs that exceed 100 percent of the structures value. Indeed, BCO § 18-59 contains only a *presumption* that a structure that needs repairs costing in excess of 100 percent of the structure's true cash value prior to becoming unsafe should be demolished. But, under BCO § 18-61, a person can make their case to city council and overcome the presumption, allowing for repairs rather than demolition. The ordinance itself also allows repairs without regard to cost when the structure is unsafe because of weather-related causes, i.e., not through owner neglect or negligence. Because the ordinances provide a meaningful hearing at a meaningful time, and because even when using the majority's added "safeguard" of an automatic repair option there are circumstances under which repairs can be made, we must uphold the validity of the ordinances against this facial challenge.

Finally, the decisional law from our sister states used by the majority to buttress its position on this issue is either inapplicable or unpersuasive. For instance, the Kentucky Court of Appeals' decision in *Washington v City of Winchester*, 861 SW2d 125 (Ky App, 1993), that the ordinance was arbitrary, was based on § 2 of the Kentucky Constitution that specifically prohibits absolute and arbitrary power. See *id*. at 126. Nor is there any discussion in *Washington* of the *Mathews* factors or other case law articulating the procedural due process standards that govern this issue. And, the only case *Washington* relies upon, *Johnson v City of Paducah*, 512 SW2d 514 (Ky, 1974), was also specifically based on § 2 of the Kentucky Constitution and likewise contains no discussion about what is required under the federal due process clause.

Similarly, in *Herrit v City of Butler Code Mgt Appeal Bd*, 704 A2d 186 (Pa Commw, 1997), the court did not analyze the case with procedural due process caselaw (though it does make mention of the plaintiffs asserting a Takings Clause claim), and appears to have instead utilized a standard to determine whether the ordinance was "arbitrary, unreasonable and ha[d] no substantial relation to the promotion of the public health, safety, morals or general welfare of" the city. *Id.* at 189. Again, the test used in *Herrit* is not one used to determine whether an ordinance violates the right to procedural due process, so it has no application to this issue. This is also the deficiency in *Horne v City of Cordele*, 140 Ga App 127, 130-131; 230 SE2d 333 (1976), in which the court relied on general notions of arbitrariness and public necessity to strike down the ordinance. That case *may* be helpful in considering plaintiffs' *substantive* due process claim (though in the end it really is not), but it offers no persuasive value with respect to the *procedural* due process issue.[5]

In sum, there is no dispute that plaintiffs received proper notice of the city inspector's decision, had the opportunity to appeal that decision to city council where a full hearing was held, and received a decision from what the majority concedes was an impartial decision-maker. Considering the *Mathews* factors, the city's ordinance satisfied the requirements of due pro-

---

[5] "Analyzing violations of substantive and procedural due process involves separate legal tests." *Garza-Garcia v Moore*, 539 F Supp 2d 899, 907-908 n 11 (SD Tex, 2007). See, also, *Cobb v Aytch*, 472 F Supp 908, 925-926 (ED Pa, 1979) aff'd in part, vacated in part, and rev'd in part on other grds 643 F2d 946 (CA 3, 1981). Thus, the majority should not conflate caselaw and its reasoning between the two different constitutional concepts. And, the fact that analyzing procedural due process claims requires a "flexible approach" does not mean that the different standards for analyzing these separate claims should be melded together.

cess.[6] Plaintiffs received all the process that they were constitutionally due, and this Court should not rule to the contrary.

## II. SUBSTANTIVE DUE PROCESS

Turning now to the ruling actually made by the trial court, it is clear that the answer to plaintiffs' substantive due process claim[7] is not as simple. In the end, however, it meets with the same fate. Unlike procedural due process, substantive due process bars " 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Mettler Walloon*, 281 Mich App at 197, quoting *Co of Sacremento v Lewis*, 523 US 833, 840; 118 S Ct 1708; 140 L Ed 2d 1043 (1998). The established test that a plaintiff must prove is " '(1) that there is no reasonable governmental interest being advanced by the present zoning classification or (2) that an ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question.' " *Dorman v Clinton Twp*, 269 Mich App 638, 650-651; 714 NW2d 350 (2006), quoting *Frericks v Highland Twp*, 228 Mich App 575, 594; 579 NW2d 441 (1998). Here, no one questions that the ordinances advance a legitimate governmental interest. Thus, the sole issue on the substantive due process claim is whether the ordinances are an unreasonable means of advancing the undisputed governmental interest.

---

[6] Though the actual facts of what transpired during plaintiffs appeal are not relevant to this facial challenge, *Forsyth Co*, 505 US at 133 n 10, during the appeal and hearing before city council the parties submitted expert reports, affidavits, PowerPoint Presentations, live testimony, and oral arguments. The city council also provided a written decision.

[7] This is also a facial challenge to the city ordinances.

In conducting this analysis, the standard we must employ is again vitally important. Judicial review of a challenge to an ordinance on substantive due process grounds requires application of three rules:

> (1) the ordinance is presumed valid; (2) the challenger has the burden of proving that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of the property; that the provision in question is an arbitrary fiat, a whimsical ipse dixit; and that there is not room for a legitimate difference of opinion concerning its reasonableness; and (3) the reviewing court gives considerable weight to the findings of the trial judge. [*Yankee Springs Twp v Fox*, 264 Mich App 604, 609; 692 NW2d 728 (2004), quoting *A & B Enterprises v Madison Twp*, 197 Mich App 160, 162; 494 NW2d 761 (1992).]

Applying this difficult and deferential standard, and recognizing that we conduct a de novo review of the trial court's decision, I would hold that BCO § 18-59 survives plaintiffs' facial challenge. There are at least two reasons supporting this conclusion. First, city council's decision to implement a presumption of demolition if the repair costs exceed 100 percent of the value of the structure before it because unsafe is neither unreasonable nor arbitrary. For one, the ordinance is not a flat prohibition precluding all property owners within the Brighton city limits an opportunity to repair an unsafe structure, as BCO § 18-59 exempts certain unsafe structures from the presumption, in particular structures that came to be in that condition through no fault of the structure's owner, and structures that become unsafe from weather-related events or fire damage from sources other than the owner.

Additionally, for structures that are not exempt from the presumption, the ordinance grants city council the discretion to approve repairs instead of ordering demolition. For example, city council could—as plaintiffs

admit—simply decide after a hearing that the property owner should have an opportunity to repair before demolition occurs, or that repairs are only necessary. Thus, if there is a substantive due process right to repair one's property before demolition, then under this hypothetical that right is not violated. Because there are factual circumstances under which this ordinance is constitutional, under the governing standards plaintiffs cannot prevail on their facial challenge to the ordinance. *Keenan*, 275 Mich App at 680.

Second, it is difficult to conclude that the presumption is so arbitrary that it shocks the conscience. Although the position taken by the trial court and the majority is understandable, i.e., it might be good policy for the city to allow an owner to expend whatever resources they deem appropriate to repair their own premises, accepting that principle does not result in a conclusion that a presumption to the contrary for *some* unsafe structures is unconstitutional. In other words, that there may have been other reasonable means to accomplish the city's objective of removing unsafe structures from the city does not mean that the city's choice of employing these terms was arbitrary or the result of some "whimsical ipse dixit." *Yankee Springs Twp*, 264 Mich App at 609.[8] See, also, *Bolden v City of Topeka*, 546 F Supp 2d 1210, 1218-1219 (D Kan, 2008) (rejecting a substantive due process challenge to an ordinance that had a no-repair cost threshold of 15 percent, and stating that just because the city could have utilized a higher threshold does not mean that a lower one is unconstitutional.). City council is, of

---

[8] "Ipse dixit" is defined as "[s]omething asserted but not proved," Black's Law Dictionary (8th ed), so an ordinance resulting from a "whimsical ipse dixit" must result from an impulsive decision that has no proven basis to support it.

course, the policy-making body for the city, and we must be extraordinarily careful not to utilize somewhat vague constitutional standards to override policy decisions that are outside our authority to make. *Warda v Flushing City Council*, 472 Mich 326, 334; 696 NW2d 671 (2005). And, given the exceptions within the ordinance and the undisputed authority of the city to regulate unsafe structures, it is a reasonable position for Brighton's leaders to enact an ordinance containing a presumption that *certain* dwellings that need *substantial* repairs (and usually because of owner neglect) should be demolished, but leaving that ultimate decision to be made by city council after a hearing.

Finally, the trial court ruled that "withholding from the owner the option to repair does not advance the [city's] proferred interest any more than permitting the owner to repair it themselves," and because of that there lacked a real and substantial relation to the object sought to be obtained by the ordinance. This rationale elevates the standard of review beyond what is required by this facial challenge. As set out above, there are many factual circumstances under which this ordinance can be constitutional, and that alone is enough to allow the ordinance to survive this facial challenge. And, even setting aside the exceptions within the ordinance and the fact that city council can order repairs instead of demolition, it is not unreasonable for the city to have implemented a rebuttable presumption for a certain class of unsafe properties.[9]

I would reverse the trial court's order and remand for entry of an order granting defendant's motion for

---

[9] Structure owners whose property the presumption applies to always have the option to repair before the city gets involved or a finding that the structure is unsafe is made. If repairs are made on a regular or as-needed basis the structure should never become unsafe.

summary disposition on the substantive due process claim and for further proceedings on any remaining claims.